[Civ. No. 4003. Second Appellate District, Division Two.—July 9, 1925.]

## CHARLES L. WETZLER et al., Respondents, v. P. A. PATTERSON, Appellant.

[1] LEASES—ADVANCE RENT—BREACH BY LESSEE.—The general rule is that rent paid in advance cannot be recovered by the tenant upon the termination of the lease for condition broken, when such termination was not brought about by the wrongful act of the landlord.

[2] ID. — RETENTION OF RENT BY LESSOR — CONSTRUCTION. — Under a written lease whereby the lessee agrees to pay the total rent for the whole term "at the times and in the amounts as hereinafter

1. Right to retain rent paid in advance, note, 50 L. R. A. (N. S.) 1034. See, also, 15 Cal. Jur. 730; 16 R. C. L. 931.

set forth," to wit, a specified sum upon the execution and delivery of the lease, etc., and of this specified sum, a stated amount "shall be credited by the lessor for the rental due upon said lease" for the last three months of the term, and it is further agreed by the lessee that "upon the breach of any of the conditions above mentioned the sum . . . heretofore mentioned as rent reserved for the last three months of this lease shall be forfeited to the lessor for breach of the conditions of this lease," the stated amount provided to be "credited" as rental for the last three months of the term is an advance payment of the last three months' rent, to be retained by the lessor in any event—to be retained by him as money unconditionally owned by him, regardless of whether the lease runs its full term or is sooner terminated on account of the lessee's default.

[3] ID.—DESCRIPTION OF LEASED PREMISES — FINDING. — In an action for the recovery of rent under a written lease of premises described in said lease as containing eighty acres, and for unlawful detainer, a finding that the leased premises contain "80 acres, more or less," does not necessarily imply that the leased premises contain less than eighty acres.

[4] ID.—WORDS "MORE OR LESS."—The words "more or less," when used in a description of land in connection with quantity or as qualifying distances, are but words of safety and precaution, intended to cover the possibility of some slight and unimportant inaccuracy, and do not weaken or destroy such indications of quantity or distance when no other guides are furnished.

[5] ID. — DESCRIPTION — PHYSICAL BURDENS — ABATEMENT OF STIPULATED RENT.—The fact that a tract of land, which is described in a lease as containing eighty acres, and which it is admitted contains that acreage, is burdened to the extent of eleven acres, more or less, with servitudes for the use of ditches, canals and roads, affords no ground for an abatement of the stipulated rent, where the lessee has seen the ditches, canals and roads before he executes the lease, and is therefore presumed to have leased the land with notice of the servitudes and to have made his bargain with knowledge of the inconvenience resulting from them.

[6] ID.—REPRESENTATIONS—PLEADING—EVIDENCE.—In such actions, the lessee cannot successfully claim that before he signed the lease it was represented to him that eighty acres of the land was suitable for the production of alfalfa, where the leased premises contain the precise amount of acreage called for by the lease, to wit, eighty acres, and eleven of those eighty acres were occupied by ditches, canals and roads, and the lessee, who saw those visible and physical encumbrances, must have known that the whole area of eighty acres could not possibly be put under cultivation; and where, furthermore, the lessee did not plead either fraud or mistake.

[7] ID.—CONDITIONS—PAROL AGREEMENTS.—In such actions, in the absence of fraud or mistake the written lease, which is complete in itself and which says nothing about the amount of acreage suitable for cultivation, is the controlling evidence of the terms and conditions upon which the property was leased; and its terms cannot be changed by a contemporaneous parol agreement.

---

(1) 36 C. J., p. 300, n. 70, p. 302, n. 86.   (2) 13 C. J., p. 525, n. 41, 42, p. 539, n. 15; 36 C. J., p. 297, n. 83, p. 298, n. 15, p. 302, n. 86; 34 Cyc., p. 1640, n. 12.   (3) 36 C. J., p. 453, n. 90.   (4) 41 C. J., p. 215, n. 14.   (5) 36 C. J., p. 383, n. 10 New.   (6) 36 C. J., p. 421, n. 33.   (7) 22 C. J., p. 1248, n. 29, p. 1257, n. 71.

APPEALS from judgments of the Superior Court of Imperial County. Franklin J. Cole, Judge. Affirmed.

The facts are stated in the opinion of the court.

F. H. Smith and Lamy & Smith for Appellant.

Harry W. Norton for Respondents.

FINLAYSON, P. J.—Plaintiffs, who are husband and wife, brought two actions in the court below. In the one first commenced they sued for the recovery of three months' rent, due, respectively, on the 15th of November, 1920, and the fifteenth days of February and March, 1921, and also for a sum alleged to be due for water used by defendant as the lessee and which the latter, under the terms of his lease, had undertaken to pay. Later plaintiffs brought the other action, one for unlawful detainer, commenced after due service of the statutory notice to pay the overdue rent which had accrued since the first action was commenced, or to vacate the leased premises within three days. By this second action plaintiffs sought the recovery of the rent which became due on, respectively, the fifteenth days of April and May, 1921, damages for the unlawful detainer, and a forfeiture of the lease. In a separate answer and counterclaim filed in each of the actions defendant alleged that under the terms of the lease plaintiffs undertook to rent to defendant a tract of land containing eighty acres; that in fact the tract contained but sixty-five acres; that by reason of this shortage in area the amount of the agreed rent should be proportionately abated; that at the date of

73 Cal. App.—34

the execution of the lease defendant paid plaintiffs the sum of $700; that this sum should be offset against the accrued rents, and that when so applied there would be left a balance due to defendant amounting to $263.52, for which sum defendant prayed judgment. The two actions were tried together; findings and judgment, in favor of plaintiffs, were filed in each case, and from the judgment entered in each of the actions defendant has appealed. The appeals were ordered by this court to be heard and considered together.

The facts necessary to an understanding of the points presented by the appeals are briefly these: On July 7, 1920, plaintiffs, as the lessors, and defendant, as the lessee, executed a written lease whereby the former leased to the latter, for the term of three years, commencing July 15, 1920, a tract of land in Imperial County described in the instrument as follows: "The south one-half (S. ½) of the west one-half (W. ½) of Tract 77 in section . . . , township 14 south, range 13 east, containing 80 acres." Of the covenants on the part of the lessee, the instrument contains the following: " . . . the lessee agrees and binds himself: 1. To yield and pay to the lessors as rental for the use of the above premises for the term above mentioned, the full sum of $8400.00, payable at the times and in the amounts as hereinafter set forth, to-wit: $933.33 upon the execution and delivery of this lease, of which amount $233.33 shall be credited by the lessors upon the rental of the premises for the first month, to-wit, the month beginning upon the fifteenth day of July, 1920, and ending upon the fifteenth day of August, 1920; $700.00 of this amount shall be credited by the lessor for the rental due upon said lease for the last three months of the full term of said lease, to-wit, for the three months beginning on the fifteenth day of April, 1923." It is then provided that a monthly rental of $233.33 shall be paid on the fifteenth day of each of the remaining months of the term, namely, on August 15, 1920, and on the fifteenth day of each succeeding month thereafter until and including the fifteenth day of March, 1923. Following certain other covenants on the part of the lessee, this paragraph occurs: "It is further agreed by the lessee that upon the breach of any of the conditions above-mentioned the sum of $700.00 heretofore mentioned as rent reserved for the last three months of this lease shall be forfeited to the lessor

for breach of the conditions of this lease." It is further provided that "the lessor may enter . . . to expel the lessee if he shall fail to pay the rent as aforesaid." We have set forth all of the provisions of the instrument which relate to rent, including the times, amounts and manner of its payment.

On July 7, 1920, defendant took possession of the premises under the lease, and regularly paid the rent until the following month of November, He vacated the premises within a week after the commencement of the unlawful detainer action.

Though the lease does not mention the particular government section in which the tract is situated, no question is raised as to the sufficiency of the description. Indeed, the court found that the leased premises "are *known* and described as the South Half of the West Half of Tract 77 in Township 14 South, Range 13 East." (Italics ours.) Defendant was shown the land before he executed the lease, and at the same time he observed the ditches, canals and roads on the premises.

In the findings filed in each case the trial court found, among other facts, the following: "That said premises so leased . . . contains eighty (80) acres, more or less"; also that "there were certain canals and highways located upon the sides of said tract so leased by the plaintiff to the defendant, covering approximately eleven acres, the major portion of which canals and roads were a necessary part of a general irrigation and road system for ingress and egress to said property and the irrigation thereof; along with other property, and that the amount of land actually occupied as farming land by defendant under said lease was approximately sixty-eight acres." No contention is made as to the sufficiency of the evidence to support the court's findings.

Appellant's several points, reduced to their simplest form, are: (1) That the court erred in not applying the $700 deposit to the satisfaction of the unpaid monthly rentals; and (2) that the court erred in failing to conclude, as a matter of law, that there was a shortage in the amount of land leased to appellant, due to a defect in respondents' title to approximately eleven acres, thereby entitling appellant to a corresponding abatement of the rent in diminution of the amount mentioned in the lease.

The first of these contentions turns upon the true meaning and purpose of that provision of the lease whereby it was agreed that, of the $933.33 to be paid to respondents upon the execution of the lease, $700 should be credited to the rentals for the last three months of the term. If the $700 was intended to be a mere deposit by way of security to insure the faithful performance of appellant's covenants, then upon the forfeiture of the lease, which occurred when appellant failed to pay the accrued rent within the time fixed by the three days' statutory notice, the latter would be entitled to a return of the sum so deposited by him, less the amount of the rent then due and unpaid; and in such case it would be immaterial whether the sum so deposited as security be regarded as a penalty or as liquidated damages. (*Green v. Frahm,* 176 Cal. 259 [168 Pac. 114]; *Rez v. Summers,* 34 Cal. App. 527 [168 Pac. 156]; *Blessing v. Fetters,* 40 Cal. App. 471 [118 Pac. 108].) If, however, instead of intending the $700 to be a deposit to secure the faithful performance of appellant's covenants, the parties intended that this sum should be regarded as a payment to respondents upon the contract, by way of part performance by appellant, i. e., if it was intended to be an advance payment for and on account of the last three months' installments of rent—then and in that case no part of the $700 can be recovered by appellant, nor can any part of it be offset against the amounts sued for by respondents in these actions. [1] The general rule deducible from the authorities is that rent paid in advance cannot be recovered by the tenant upon the termination of the lease for condition broken, when such termination was not brought about by the wrongful act of the landlord. (*Curtis v. Arnold,* 43 Cal. App. 97 [184 Pac. 510]; *Galbraith v. Wood,* 124 Minn. 210 [Ann. Cas. 1915B, 609, 50 L. R. A. (N. S.) 1034, 144 N. W. 945], and authorities cited in the note thereto; *Dutton v. Christie,* 63 Wash. 373 [115 Pac. 856]; *Rockwell v. Eilers Music House,* 67 Wash. 478 [39 L. R. A. (N. S.) 894; 122 Pac. 12]; *Evans v. McClure,* 108 Ark. 531 [158 S. W. 487]; *Collier v. Wages,* (Tex. Civ. App.), 246 S. W. 743; *Hepp Wall Paper etc. Co. v. Deahl,* 53 Colo. 274 [125 Pac. 491].) "In case the rent has been paid in advance under a stipulation that it shall be so paid, and the landlord re-enters for conditions broken, even in the absence of an agreement to that effect,

the landlord is entitled to retain the rent so paid, though the re-entry is before the expiration of the period for which the rent was paid." (*Galbraith* v. *Wood, supra.*) In *Curtis* v. *Arnold, supra,* Mr. Presiding Justice Waste, speaking for the court, said: "If the money be regarded as given in consideration of the covenants of the lease when paid, the title thereto passed to the lessor (*Ramish* v. *Workman,* 33 Cal. App. 19 [164 Pac. 26]; *Dutton* v. *Christie, supra*); if it is to be regarded merely as an advance payment of rent, the lessor is entitled to retain it. (*Galbraith* v. *Wood, supra;* . . .)" In that case our supreme court denied a petition to have the cause heard in that court after judgment in the district court of appeal. The rule is stated in Ruling Case Law as follows: "Provision is sometimes made in a lease for the payment in advance of the rents of the last or later periods of the lease, and such a provision has been held not to be a security merely for the lessee's performance of his agreements in the lease, but purely a payment of rent in advance, and therefore may be retained by the lessor though he terminates the lease for the default of the lessee as provided for in the lease." (16 R. C. L. 931.)

[2] Thus we are brought to a consideration of the proper interpretation to be placed upon the clauses in question. Do they mean that the $700 was a deposit to secure the payment of rent and the faithful performance of the lessee's other promises; or do they mean that the $700 is to be considered as an advance payment of the rent for the last three months of the term? We think the latter interpretation expresses the true meaning of the contract. It will be recalled that in the first of appellant's covenants in which the subject of rent is mentioned he binds himself to pay the $8,400—the total rent for the whole term—"*at the times* and *in the sums* hereinafter set forth, to-wit: $933.33 upon the execution and delivery of this lease," etc.; and that of this sum, $700 "shall be credited by the lessor for the rental due upon said lease" for the last three months of the term. Here is an unequivocal covenant by the lessee to pay the total rental of $8,400 "at the times" and "in the sums" set forth in the paragraph wherein this covenant occurs. One of the sums thus to be paid by the lessee on account of the total rental for the whole term is the sum of $933.33. That sum was to be paid immediately "upon the execution and

delivery'' of the lease. Of the sum so to be paid to the lessors, $700 was to be ''credited'' for ''the rental due upon said lease for the [last] three months of the full term.'' There is no reason why the lessors could not or should not credit this sum of $700 upon the rentals for the last three months immediately upon their receipt of the $933.33, i. e., immediately upon the execution of the lease. And it doubtless was the intention of the parties that the money should be so immediately credited by the lessors upon its receipt by them. Nowhere in the instrument is any provision made for the repayment to the lessee of the $700, or for the repayment of any part of the $933.33 which the latter undertook to pay upon the execution of the lease. No provision is made for its repayment at any time or upon any contingency. On the contrary, the language of this part of the lease clearly implies that all of the $933.33, including the $700 in question, was to belong absolutely to the lessors from the moment of its receipt by them. For these reasons we think it clear that the covenant which we are now analyzing, the one found in the first part of the lease, provides for and contemplates the payment of money, and not the deposit of security. That is to say, it is a covenant by the lessee for the immediate partial performance by him of his contract to pay rent by making immediately an advance payment of the rent for the last three months of the term.

If there had been no further mention of the $700 than that found in the first part of the lease, it necessarily would follow from what thus far has been said that respondents own the money and may rightfully retain it. Is the nature of the above analyzed provision concerning the $700 changed from one for the advance payment of rent by the added stipulation, found in a subsequent paragraph of the lease, wherein it is provided that upon the breach of any of the lessee's covenants the ''$700 heretofore mentioned as rent reserved for the last three months of this lease shall be *forfeited* to the lessor''? We think not. The reference to the $700 as ''rent *reserved* for the last three months'' is readily reconcilable with the true meaning of the covenant already analyzed by us—the one which, as we have stated, unmistakably provides for the advance payment of rent. '' 'Reserve' means to keep, to hold, to retain.'' (*Myers* v. *Conway & Co.*, 90 Ala. 109 [7 South. 639].) The reference to the

$700 as rent "reserved" for the last three months of the term is entirely consistent with the idea that the sum so reserved was intended to be an advance payment of rent, to be kept, held and retained by the lessors.

The one and only word in the whole lease which might cast any possible shadow of doubt upon the conclusion that the $700 was intended to be an advance payment of rent is the word "forfeited," occurring in the later paragraph—the one which provides that upon the breach of any of the lessee's covenants the $700 "shall be forfeited to the lessor." This word "forfeited," if it stood alone, might imply that the lessee still retained some sort of an interest in the $700 which he could lose by forfeiture. What, then, was the purpose, within the intention of the parties, of the provision that upon the breach of any of the lessee's covenants the $700 "shall be forfeited to the lessor"? If the lessee, in his covenant to pay the rent at the times and in the sums as set forth in the first part of the lease, had not unequivocally covenanted to pay the $700 in partial performance of his contract, as an advance payment of rent, or if there had been some provision for the return of this sum to the lessee upon any contingency whatever, there might have been some ground for construing the word "forfeited" as containing the implication that the lessee retained some forfeitable interest in the money. The contract must be considered as a whole, and the intention of the parties gathered from within the four corners of the instrument. It is the covenant first considered by us which deals with "the times" when and "the sums" in which the rentals are to be paid. That covenant, as we have seen, discloses an unmistakable intention to regard the $700 as a payment and not as a deposit—to regard it as an advance payment of rent. And, as we have shown, where rent is paid in advance the law itself, in the absence of any agreement therefor, authorizes the landlord to retain the rent so paid though he re-enter before the expiration of the term. We think the most reasonable conclusion to be deduced from a consideration of the lease as a whole is that in using the word "forfeited" in the subsequent paragraph of their writing it was the purpose of the parties to "make assurance doubly sure" by declaring what the law itself, in the absence of any provision for a forfeiture, would have declared. It is true that by putting

this construction upon the word "forfeited" we in effect deprive it of all practical efficacy. But the same result would follow if we were to adopt the only other possible interpretation of the first-mentioned covenant. That covenant means either that the $700 was intended to be an advance payment of rent or that it was intended to be a mere deposit to secure the performance of the lessee's covenants to pay the rent. There is no other possible interpretation. If the second of these alternative interpretations should be adopted, then the word "forfeited" in the subsequent paragraph of the writing would be just as inoperative as it would be under the first and more obvious interpretation. That is to say, if we should interpret the earlier covenant as meaning that the $700 was intended to be a deposit by way of security for the payment of the rent. so as to leave some interest in appellant capable of being forfeited, then the provision for forfeiture found in the subsequent clause of the lease would be either a penalty or a provision for liquidated damages. But whether it were the one or the other, it would come within the terms of section 1670 of the Civil Code, and would be illegal and void. (*Green* v. *Frahm, supra.*) It follows, therefore, that under neither interpretation can any really operative effect be given to the forfeiture clause. And as it is not to be presumed that the parties deliberately entered into an illegal contract for a forfeiture, as would be the case if we treated the $700 as a sum deposited by way of security, we think that the more reasonable interpretation to put upon the forfeiture clause is that the parties intended thereby to emphasize their previously manifested intention that the $700 should be an advance payment of the last three months' rent, to be retained by the lessors in any event—to be retained by them as money unconditionally owned by them, regardless of whether the lease ran its full term of three years or was sooner terminated on account of the lessee's default.

We come now to appellant's second point—his claim that he is entitled to an abatement of the accrued rents in diminution of the amounts fixed in the contract. There was no shortage in the area of the land actually leased to appellant. [3] The finding of the trial court that the leased premises contain "80 acres, more or less," does not necessarily imply

that the tract contained less than eighty acres. [4] The words "more or less," when used in a description of land in connection with quantity or as qualifying distances, are but words of safety and precaution, intended to cover the possibility of some slight and unimportant inaccuracy, and do not weaken or destroy such indications of quantity or distance when no other guides are furnished. (*Oakes* v. *DeLancey*, 133 N. Y. 227 [28 Am. St. Rep. 628, 30 N. E. 974]. See, also, *Hills* v. *Edmund Peycke Co.*, 14 Cal. App. 32 [110 Pac. 1088].) [5] Indeed, the evidence shows that the leased premises, the south half of the west half of tract 77, contained exactly eighty acres. In his brief filed in this court appellant admits that "there were eighty acres of land in the tract leased." What he does claim is, not that there was a shortage in the area of the land leased, but that there was a failure of title to eleven acres, more or less, because that amount of acreage was burdened with servitudes for the use of ditches and canals and the road which ran along them. But physical and visible burdens of that sort afford no ground for an abatement of the stipulated rent. The lessee, who saw the ditches, canals and roads before he executed the lease, is presumed to have leased the land with notice of the servitudes and to have made his bargain with knowledge of the inconveniences resulting from them. In *Ferguson* v. *Edgar*, 178 Cal. 17 [171 Pac. 1061], the court had under consideration the question as to whether a public highway and a district canal used to convey water for irrigating a farm, in common with other lands in the district, constituted a burden thereon within the meaning of a covenant against encumbrances. Referring to that covenant, the court said: "It was not considered as having reference to obvious and physical burdens, permanent in character, such as a state highway [or irrigating canal], the use of which was open and notorious. As to such obvious burden the party proposing to buy, having full knowledge of the servitude and the necessity therefor as a means of egress and ingress to the premises, contracts subject to the physical and visible burden imposed upon the land." (See, also, *Jaques* v. *Tomb*, 179 Cal. 444 [177 Pac. 280]; *McCarty* v. *Wilson*, 184 Cal. 194, 199 [193 Pac. 578]; *Pacific Portland Cement Co.* v. *Placer County Land Co.*, 187 Cal. 175 [201 Pac. 126]; *Weller* v. *Fidelity etc. Co.*, 23 Ky. Law Rep.

1136 [64 S. W. 843]; *Wetherby* v. *Griswold,* 75 Or. 468 [147 Pac. 388].) In *Dodds* v. *Toner,* 3 Ind. 427, a farm was conveyed by warranty deed. At the time of the purchase the vendee knew that there was a schoolhouse on a part of the premises, occupied by a school and owned by the school district. In holding that the purchaser was not entitled to any abatement of the purchase price, the court in that case said: "The purchaser of the farm was entitled to no deduction from the purchase money in this case by way of damages on account of the location of the schoolhouse, as he purchased with notice of its existence, location and the condition of the title to the ground on which it stood." The principle enunciated in these cases is equally applicable to the present case.

[6] Appellant claims that before he signed the lease it was represented to him that eighty acres of the land was suitable for the production of alfalfa. But since the leased premises contain the precise amount of acreage called for by the lease, to wit, eighty acres, and since eleven of those eighty acres were occupied by ditches, canals and roads, it is obvious that appellant, who saw those visible and physical encumbrances, must have known that the whole area of eighty acres could not possibly be put under cultivation. Moreover, he has not pleaded either fraud or mistake. [7] In the absence of fraud or mistake the written lease, which is complete in itself and which says nothing about the amount of acreage suitable for cultivation, is the controlling evidence of the terms and conditions upon which the property was leased. Its terms cannot be changed by a contemporaneous parol agreement.

The judgment in each case is affirmed.

Works, J., and Craig, J., concurred.