[Civ. No. 6464. Second Appellate District, Division Two.—February 17, 1931.]

CHARLES T. SERVAIS et al., Respondents, v. BENJAMIN KLEIN et al., Defendants; NELLIE KEY et al., Appellants.

Halverson & Halverson for Appellants.

Thomas A. Berkebile for Respondents.

WORKS, P. J.—This is an action for unlawful detainer, arising upon the terms of a written lease. The instrument was entered into between plaintiffs as lessors and the defendants Klein and Weiss as lessees, but the latter assigned their interest under it to Thomas B. Key, formerly a defendant in the action, and the present defendant Nellie Key. Pending proceedings in the trial court Thomas B. Key died and defendant Fraser as administrator of his estate was substituted in his place. Judgment went against Fraser as administrator and Nellie Key. They appeal.

The principal point in the case is that which requires the construction of a certain paragraph of the lease, which reads:

"At the time of the execution of these presents the Lessees have paid to the Lessors in addition to the sum of Thirty-five Hundred ($3500.00) Dollars as the first month's rent of the term of the lease the sum of Eight Thousand ($8000.00) Dollars, and have executed to the Lessors two (2) promissory notes each for the sum of Two Thousand ($2000.00) Dollars and due one (1) year from date, as security for the faithful performance by the Lessees of all of the terms, covenants and conditions of this lease, and in the event said Lessees shall faithfully perform all of said terms, covenants and conditions, said total sum of Twelve Thousand ($12,000.00) Dollars shall be applied by the Lessors as payment of rent for the last three (3) months of the terms of this lease. In the event, however, said Lessees shall fail to perform all of the terms, covenants or conditions of this lease they shall forfeit all right of every kind and nature in and to said sum of Twelve Thousand ($12,000.00) Dollars, and such forfeiture shall not preclude the Lessors from recovering in addition thereto all rents due or damages suffered by reason of a violation by the Lessees of any of the terms, covenants or conditions of this lease."

■ The question concerning the paragraph is presented under these circumstances: Appellants contend that a certain portion of it is void as providing for a forfeiture. The trial judge adopted the contrary view and made findings and rendered judgment accordingly.

Before taking up the authorities upon which the parties respectively rely for a solution of the question presented, it becomes necessary to make some analysis of the paragraph of the lease from which the controversy between them springs. It is provided therein, first, that the $8,000 and the two notes were deposited with the lessors "as security for the faithful performance by the lessees of all the terms, covenants and conditions of this lease, and in the event the lessees shall faithfully perform all of said terms, covenants and conditions, said total sum of $12,000 shall be applied by the lessors as payment of rent for the last three months of this lease", and, second, "In the event, however, they shall fail to perform all the terms, covenants and conditions of this lease they shall forfeit all right of every kind and nature in and to said $12,000 and such forfeiture shall not preclude the lessors from recovering in addition thereto all rents due or damages suffered by reason of a violation of the terms, covenants and conditions of this lease." If these two provisions, thus segregated, be set each against the other, to put it differently, if each be construed in connection with the other, it must appear that the first has passed out of existence as an operative factor in the lease, because of the default in payment of rent from which the litigation has ripened, while because of that default the second has sprung up as the sole provision from which the litigation, so far as the present point is concerned, must be determined. The language of the first provision to the effect that the money and notes passed as security for the performance of all the terms, etc., of the instrument must be construed as if it read that they so passed if and in the event all the terms were performed. This for several reasons. It will be observed that the language as to security is followed by a provision that the $12,000 is to be applied to the payment of rent for the last three months of the term of the lease, but that language can be operative only "in the event the lessees shall faithfully perform all of said terms", etc. Specifically, the provision means, then, that the $12,000 is

security and is to be applied on the last three months' rent only in the event that the lessees shall voluntarily pay all rent except that for the last three months. In other words, if the lease terminated before the expiration of the full term provided in it, because of breach of condition, there is nothing to which the security can be applied, and it has so terminated, upon the election of the lessor, because of the nonpayment of rent during the progress of the full term and before the last three months has been reached. Here it should be observed that the rent reserved by the lease was $4,000 per month. The last three months' rent, if the tenancy went the full term, would therefore exactly consume the $12,000.

The view we have above expressed as to the wiping out of the first segregated clause is irrefutably confirmed by a view of the second clause. The latter begins, ''In the event, however,'' thus setting that clause in direct opposition to the first. The ''event'' referred to by this expressive language is that the lessees ''shall fail to perform all the terms'', etc., one of which, of course, was the payment of rent. In that event, not only does the second clause provide that the lessees shall forfeit the $12,000, but that ''such forfeiture shall not preclude the lessors from recovering in addition thereto'' all rents due or damages caused by reason of a violation of the terms, etc., of the lease. It is plain that under such language the $12,000 cannot now be considered as security and that it cannot now be applied to the payment of any portion of the rent if the clause be operative under the law. The clause providing for a forfeiture is therefore, we repeat, the only one of the segregated clauses which requires our attention.

In considering the paragraph of the lease which is now before us, appellants rely upon *Schnittger* v. *Rose,* 139 Cal. 656 [73 Pac. 449]; *Baker* v. *Eilers Music Co.,* 26 Cal. App. 371 [146 Pac. 1056]; *Rez* v. *Summers,* 34 Cal. App. 527 [168 Pac. 156]; *Green* v. *Frahm,* 176 Cal. 259 [168 Pac. 114]; *Curtis* v. *Arnold,* 43 Cal. App. 97 [184 Pac. 510]; *Parish* v. *Studebaker,* 50 Cal. App. 719 [195 Pac. 721]; *Knight* v. *Marks,* 183 Cal. 354 [191 Pac. 531]; and *Wetzler* v. *Patterson,* 73 Cal. App. 527 [238 Pac. 1077].

In presenting their views respondents depend upon *Curtis* v. *Arnold, supra, Wetzler* v. *Patterson, supra, Mc-*

*Arthur* v. *Kluck,* 75 Cal. App. 785 [243 Pac. 453], *Pigg* v. *Kelley,* 92 Cal. App. 329 [268 Pac. 463], and *Gordon* v. *Harris,* 94 Cal. App. 682 [271 Pac. 779].

These cases have all been considered by us, but with very little profit. In none of them was there considered such a lease as the one before us now, as it is viewed in the analysis above set forth. There is general language in several of the cases which seems upon a mere reading to apply here, but such language, of course, must be measured by the terms of the instrument under consideration by the court in each particular case. The only authority which has been of material aid to us is *Green* v. *Frahm,* 176 Cal. 259 [168 Pac. 114, 115]. In that case Frahm was the lessor and one Cohn was the lessee. The lease provided: ''Cohn hereby deposits with Frahm the sum of three thousand dollars, receipt whereof is hereby acknowledged, said sum of three thousand dollars to be retained by Frahm as a guarantee that Cohn will pay the rent as herein provided, and in the manner herein specified, and will keep and perform each and every covenant herein contained to be performed by Cohn, and in the event of the failure of Cohn to pay the rent or to keep or perform any of the covenants herein contained to be performed by Cohn, then and in that event the said sum of three thousand dollars shall become forfeited unto Frahm.'' Concerning this provision the Supreme Court said, the italics being those of the court: ''The first paragraph of the above quoted provisions of the lease naturally divides itself into two parts: One, a provision that the three thousand dollars deposit with Frahm was to be a guarantee for the performance by Cohn of the covenants of the lease, including the payment of rents; the other, that in the event of the failure of Cohn to perform any of said covenants, the said money should become forfeited to Frahm. The provision for a forfeiture upon the failure of Cohn to pay the rent was either a penalty, or a provision that the three thousand dollars should be liquidated damages for the breach of the covenants. In either aspect the provision was void. Whether as liquidated damages or as a penalty, it comes within the terms of section 1670 of the Civil Code, that is, it is an attempt to fix by contract 'the amount of damage to be paid, *or other compensation to be made,* for a breach of an obligation', in anticipation thereof, and by that

section it is declared to be void, unless the case is of such a nature that 'it would be impracticable or extremely difficult to fix the actual damage', as provided in section 1671 of the Civil Code. (*Jack* v. *Sinsheimer*, 125 Cal. 563 [58 Pac. 130].) Calling it a penalty instead of liquidated damages does not change its nature. The case .cited also declares that the fixing of damages for breach of an obligation to pay rent is not impracticable or extremely difficult. There was no evidence in the case showing any peculiar circumstance which would make such damages more difficult to fix in this case than in the ordinary case. Such difficulty is not to be presumed. (*Long Beach* v. *Dodge*, 135 Cal. 404 [67 Pac. 499].) This part of the clause must therefore be treated as a void provision, and disregarded entirely. The other part of the clause, providing for the deposit of three thousand dollars as a guarantee for the payment of rent, was for a legal purpose and was in all respects valid and enforceable. In virtue of that clause, Frahm had the legal right, in case of the failure of Cohn to pay rent, to retain the three thousand dollars and apply it on the rent until the same was exhausted. He did not choose to do this, but, on the contrary, he immediately began proceedings for the restitution of the premises, and the recovery of the rent due, and succeeded in obtaining judgment for both, and also for the cancellation of the lease. He is, of course, bound by his own judgment, and therefore the lease must be considered as having been terminated on March 1, 1912. The complaint alleged that Frahm refused to return any portion of the three thousand dollars to Cohn, or to apply any portion thereof to the rent due. The answer admits this to be true, and alleges that by the terms of the contract it was to be retained by Frahm as a guarantee for the payment of the rent, as it became due. Frahm did not ask that he be allowed to retain five hundred dollars of the money in satisfaction of his judgment for rent. He defended on the ground that the whole sum had become absolutely forfeited to his use and was his own property, by reason of the failure of Cohn to pay the rent, and notwithstanding the early termination of the lease at his own request. Under these circumstances, the conduct of Frahm must be deemed to be a repudiation of the security and a waiver of the right to retain the three thousand dollars as security for the pay-

ment of rent subsequently accruing, and of his right to apply any portion thereof to the rent due. The fund deposited is therefore to be considered as money held by Frahm, as bailee, for the use of Cohn, and due demand having been made for its return, the plaintiff was entitled to recover it.''

We think the provision passed upon by the Supreme Court in that case is enough like the one before us to render the case controlling here. Indeed, the provision we now consider is more clear, as looking toward invalidity, than the one considered by the Supreme Court. Respondent points to the fact that the lease dealt with in *Green* v. *Frahm,* contained a provision to the effect that if Cohn paid all the rent the $3,000 was to be returned to him, but that provision, as it will be noted, cut no figure in the decision of the point before the court.

The Supreme Court said in its opinion that ''Frahm did not ask to be allowed to retain five hundred dollars of the money in satisfaction of his judgment for rent. He defended on the ground,'' the suit being one to recover from him the $3,000, ''that the whole sum had become absolutely forfeited to his use and was his own property, by reason of the failure of Cohn to pay the rent, and notwithstanding the early termination of the lease at his own request''. We do not pause to consider whether respondents here could have asked that the $12,000 be applied to the payment of their judgment for rent. It is enough to say that they did not make the attempt. They demeaned themselves exactly as Frahm did in the action brought against him. The defendants here filed a counterclaim asking for the return of the $12,000 and respondents interposed an answer under which they claimed, as they now claim, that the sum had been absolutely forfeited to them. On the whole, we are convinced that respondents are not entitled to retain the $12,000.

▪ Under a clause of the lease providing for attorneys' fees the trial court allowed respondents the sum of $800 in that behalf. Appellants contend that the allowance was excessive. In view of the disposition we have made of the question as to respondents' right to retain the alleged forfeit of $12,000, we think too much was allowed as attorneys' fees. No evidence was introduced upon the issue and

the trial judge was left to fix the fee upon his knowledge of the nature and progress of the litigation. The question as to the disposition of the $12,000 was evidently the most important point litigated in the case, and the decision of the trial judge that respondents should retain the amount must have influenced greatly the fixing of the fee. It is to be noted upon this point, also, that there was evidence that it was unnecessary to maintain an action to recover possession of the demised premises, and respondents direct our attention to no evidence to the contrary. We find it impossible to fix the fee ourselves. We can have from the record no complete knowledge of the facts in the trial judge's mind which should govern in the determination of the amount to be allowed. Upon a retrial of the cause, therefore, the trial court will fix a fee, in lieu of the former allowance of $800, which shall be proper under such evidence as may be submitted to it upon the issue, subject, however, to what is said above in this paragraph.

We have already observed that defendants interposed a counterclaim asking for a return of the $12,000 in litigation between the parties and that respondents filed an answer thereto. At the trial the court refused to hear evidence in support of the counterclaim on the ground that the pleading was not proper in the action, and also found, at the conclusion of the trial, that defendants were entitled to take nothing under the counterclaim. Appellants contend that in these rulings the court erred. It is asserted that the counterclaim was proper but that, if it was not, respondents by answering waived all objection to it.

Taking these points in their inverse order, we think respondents, by answering the counterclaim, did not waive the point that the pleading was not a proper one in the action, but preserved it by objecting to the admissibility of evidence under it (*Placerville Gold Min. Co.* v. *Beal,* 168 Cal. 682 [144 Pac. 748]). This conclusion makes it necessary to determine whether the counterclaim was proper to the litigation. Certainly, it is the general rule that neither a cross-complaint nor a counterclaim may be interposed in the action of unlawful detainer (*Warburton* v. *Doble,* 38 Cal. 619; *Rydell* v. *Beverly Hills P. & P. Co.,* 88 Cal. App. 216 [262 Pac. 818]), for the reason that "in an action in unlawful detainer for the restitution of premises

withheld by tenants in violation of the covenants of their lease they cannot frustrate the extraordinary remedy provided by the statute through the means of a cross-complaint or counterclaim'' (*Smith* v. *Whyers*, 64 Cal. App. 193 [221 Pac. 387, 388]). The language just quoted is immediately followed, in the opinion from which it is taken, by this expression of doubt: ''What the rule would be if the tenant should relinquish possession and join issue solely on the rent money need not be determined because the appellant here was not satisfied to make that issue, but insisted upon retaining possession throughout the litigation.''

This expression, so far as we may discover, has never been noticed in any later case, but because of the showing made by the record in the present instance it becomes necessary to give it some attention now. We have already observed that there was undisputed evidence at the trial tending to prove that it was not necessary for respondents to institute an action for the recovery of possession of the property demised by the lease. It now becomes advisable to state what that evidence was. After service upon him of three days' notice to quit possession of the premises and before service of summons in the action, Dr. Key had a conversation with respondent Charles T. Servais. The testimony of the doctor shows the nature of it: ''Q. And what did you tell him? A. That I could not raise the money for the rent and he could take possession. . . . He said 'Well, I have got to have the rent or possession.' . . . I says 'You know your rights, Mr. Servais. It is optional with you as to what steps you take.' Q. But you told him that he would have to take possession? A. That he could take possession.'' A little later Dr. Key testified further: ''Q. Now, Doctor, after the suit was brought did you see Mr. Servais, or at the time the suit was brought did you see Mr. Servais? A. Yes, sir. Q. And what did he say to you or you say to him with reference to possession of the property? . . . A. I said that he could have possession. Q. And what did he say? A. He wished to protect his interests.'' At the commencement of the litigation a receiver was appointed to take possession of the demised premises and possession was surrendered to him upon demand. Soon after the appointment the counsel for appellants wrote the counsel for respondent a letter which was, in part, as follows: ''Inas-

much as you are asking for a forfeiture of the lease and we by our answer consent thereto, there is absolutely no need of a receiver in the case, and we suggest that the order appointing the receiver be forthwith set aside in order to avoid any further cost or expense. Your stenographer said that you would be out all day, and in order that the matter may not be overlooked we call your attention to it by letter. We will appear in court at any time and join with you in a request to set aside that order, if our joinder is necessary. Please care for the matter at once. . . . '' The verified answer of defendants to the complaint contains the following matter: ''Admit all the allegations of [a certain paragraph] of said complaint, except these defendants deny that they neglected or refused for the space of three days or upward after demand was made, or that they still neglect or refuse to pay said rent or to surrender possession of said premises, furniture, furnishings or equipment; and in this connection these defendants alleged that on the 16th day of June, 1925, they were unable to pay said rent and that after the demand aforesaid was served upon these defendants the plaintiffs and these defendants entered into negotiations for the purchase or exchange of the interest of plaintiffs in and to the property herein mentioned, and that while said negotiations were still pending the plaintiffs brought this action and procured the appointment of a receiver herein, without notice, and that upon the demand of said plaintiffs and said receiver, these defendants immediately surrendered possession of said premises and property to the plaintiffs and said receiver.'' It is also alleged in the answer ''that upon demand after the commencement of said action they surrendered said property to said plaintiffs and they now confirm said surrender and hereby surrender and confirm said property and said lease and the term thereof, to said plaintiffs . . . ''. The counterclaim interposed by defendants contains matter similar to that above quoted from the answer.

It will be observed from all these items of evidence and matters of pleading that there was never an issue between the parties upon the question of the possession of the demised premises. Both as a matter of procedure and as a matter of substance the case was one in which was actually litigated only a question of rent, a question as to the dis-

position of the $12,000 and a question as to counsel fees. Defendants, then, had placed themselves in legal effect in the position of the tenant in the quotation last above taken from the opinion in *Smith* v. *Whyers*. They, so far and as completely as lay in their power, had relinquished possession of the property and had joined issue only upon questions which were entirely apart from the question of possession. The filing of their counterclaim could in no way ''frustrate the extraordinary remedy provided by the statute'' in detainer cases. The rule that a cross-complaint or counterclaim may not be interposed in such cases is an exception to the general rule which allows such pleadings in other cases, and it should not be extended beyond the reason which lies behind it. That is, the exception should not be invoked to nullify the general rule in cases where there is no basic reason for the existence of the exception. Further, the exception, wherever it is made operative, tends to the necessity for a multiplicity of suits, for where the tenant may not urge any claim by way of cross-complaint or counterclaim he is compelled to enforce his rights by the prosecution of an independent action. Such a situation is intolerable except in those cases in which it is necessary, upon reason, to enforce the rule against the filing of pleadings by defendants asking affirmative relief. No such necessity existed in the present case. We think the counterclaim was therefore proper.

The judgment is reversed. The trial court is directed to render judgment in favor of appellants for $12,000, less the amount declared by the judgment appealed from to be due plaintiffs for rent and any amount hereafter found to be due as counsel fees, a new trial being ordered on the issue of counsel fees alone.

Craig, J., and Thompson (Ira F.), J., concurred.