[Civ. No. 12285. First Dist., Div. One. Apr. 5, 1943.]

R. O. KRAMER, Respondent, v. J. C. MUSSER, Appellant.

Heller, Ehrman, White & McAuliffe for Appellant.

A. B. Bianchi for Respondent.

WARD, J.—Plaintiff brought this action to recover damages for false representations made in the negotiation and sale to him of a parcel of real property, on which was erected a three-story building divided into four residential flats or apartments. The representations were that the building was free from termites and dry rot; that the entire roof was covered with new roofing material, and that the hot and cold water pipes in the plumbing system were of copper and brass respectively.

The trial court found that the representations as to the freedom of the building from termites and dry rot had been made as alleged; that they were false and that plaintiff re-

lied on them in making the purchase. It awarded him damages in the sum of $1,350 on that account. It made no findings as to the truth or falsity of the remaining allegations. Defendant appeals from the judgment.

██ Resolving all conflicts in the evidence in favor of the court's findings the evidence may be summarized as follows: The sale was negotiated by a real estate broker. The plaintiff, a successful business man with some experience in real estate transactions, accompanied by Mrs. Leona Hurst and a Mrs. Maushardt—the latter an employee of the broker—visited the premises late in the afternoon of March 14, 1938, for the purpose of examining them. This examination was cursory and occupied little time owing to the failing light, and it was then arranged that a further and more thorough examination should be made. Accordingly, the above parties, accompanied by defendant, went out to the property on March 15th. On this occasion the defendant conducted the parties through the entire building, showing them each apartment, the roof and basement. At this examination plaintiff noticed that one of the hot water pipes, represented to be of copper, was fabricated of brass; also that there was some discoloration of the ceiling in one of the upper apartments, indicating perhaps a leak from the roof. In the basement were a number of lockers or small storerooms used in connection with the several apartments. With one exception these were locked, the exception being a locker used by the defendant, who occupied one of the apartments. Defendant opened this storeroom and stepped in, followed by Mrs. Hurst. This lady—who later testified at the trial as a witness for the plaintiff—described the locker as practically filled with miscellaneous articles including step-ladders, boards, old clothing and, at the far end, a covered box-spring mattress up-ended and leaning against the wall. Defendant explained that the articles therein were his personal property and that he would have them removed and the place cleaned up. No particular examination was made of this storeroom, and Mrs. Hurst described the visit as cursory and rushed.

The sale was concluded, and a short time later Mrs. Hurst, on revisiting this locker, discovered an opening in the wall 2½ x 6 feet in size, at the spot against which the box-spring mattress had been placed. Through this opening could be seen part of the foundation of the building, showing much

dry rot, which subsequent examination showed to be quite extensive; and in addition it was observed that the foundation and other structural parts of the building were badly infected by termites. These matters were called to the attention of the defendant, who had been connected with the property for a great many years, and he, after the sale, admitted that he had knowledge of the existence of the dry rot in the structure as in the past he had had occasion to make repairs on that account. In respect to termites and dry rot, the plaintiff testified that at the time of the purchase he did not know of the falsity of the representations in that regard, and relied upon them, but he admitted that at the time the representations were made he was aware of the impossibility of determining the presence or absence of termites and dry rot without opening the walls or woodwork of the building and making an examination.

In his brief the appellant states that the questions for the court's determination are (a) does the evidence support the finding of the lower court that, in purchasing the property from appellant, respondent relied upon representations found to have been made by appellant, and (b) does one who inspects property without let or hindrance before purchasing rely upon representations made by the vendor?

The evidence as related affords an inference that plaintiff relied upon the representations of defendant, and is sufficient to support the court's finding. Is plaintiff as a matter of law now prevented from saying that he placed reliance upon such representations? Or, stating the matter in another way, in view of his knowledge of the difficulty in ascertaining the presence of termites on the one hand, and on the other his opportunity for investigation, was he legally justified in relying upon defendant's representations?

In *Carpenter* v. *Hamilton,* 18 Cal.App.2d 69 [62 P.2d 1397], it was represented that a house and garage were in good condition. The evidence in many respects proved to the contrary. The seller on appeal contended that the buyers did not rely upon his representations; that the property was inspected by them several times, and that the purchase was in fact made in reliance upon what was, or could with due diligence have been, seen. It was held that there was evidence from which the buyers must have had knowledge of the falsity of the representations.

■ The law relative to actions for damages for fraudulent representations in the sale of real property is set forth in the Carpenter case (pp. 71-72, 73) as follows: ''Upon the question of knowledge it is held, generally, that where one undertakes to investigate the property involved or the truth of the representations concerning it and proceeds with the investigation without hindrance, it will be considered that he went far enough with it to be satisfied with what he learned. Mr. Pomeroy says, in speaking of one who has undertaken to make an inspection of the property, 'The plainest motives of expediency and of justice require that he should be charged with all the knowledge which he might have obtained had he pursued the inquiry to the end with diligence and completeness. He cannot claim that he did not learn the truth, and that he was misled.' (2 Pomeroy's Equity Juris., 3d ed., sec. 893.) 'One ground of this latter branch of the rule is the practical impossibility in any judicial proceeding of ascertaining exactly how much knowledge the party obtained by his inquiry; and the opportunity which a contrary rule would give to a party of repudiating an agreement or other transaction fairly entered into, with which he had become dissatisfied.' (Idem.) If it fairly appears from the evidence that the buyer undertook to investigate for himself the matters as to which representations had been made, he cannot be allowed to later claim that he acted upon the representations, even though he voluntarily abandoned his investigation before it was completed. But it is not to be understood that in all cases he will be precluded from proving that he relied upon the representations, nor does Mr. Pomeroy state that the rule is invariable. A buyer who chooses to make an inspection of the property does not in every case forfeit his right to rely upon the representations. There are exceptions. One exception relied upon by plaintiffs is that a buyer is not required to employ experts to investigate matters of a technical nature as to which the seller has full knowledge and the buyer none, and if for this reason the investigation is incomplete he may show that he relied upon the representations as to matters which he did not investigate. (*Dow* v. *Swain, supra* [125 Cal. 674 (58 P. 271)]; *Stockton* v. *Hind,* 51 Cal.App. 131 [196 P. 122]; *Fay* v. *Mathewson,* 179 Cal. 318 [180 P. 939].) This rule is not available to plaintiffs under the facts of the present case

where common physical conditions alone were involved which anyone was competent to see and understand. Another exception relied upon by plaintiffs is that a buyer is not chargeable with knowledge of conditions which he fails to discover because of same artifice or deception of the seller. Plaintiffs cannot invoke this rule for the reason that no artifice was used to forestall a complete investigation. . . . Situations which call for the measurement of conduct by the standards of ordinary care usually present questions of fact for the jury but a question of law arises when the established facts lead to a single tenable conclusion.''

 There appears to be some resemblance factually between the Carpenter case and the present, but there is sufficient dissimilarity which may be pointed out. In that case the condition of the floors and walls was open to view; not so in the case of ''termites'' as found here. The condition of the window frames in the Carpenter case could have been ascertained by slightly drawing aside the drapes, which did not constitute a hindrance to investigation. In the present case it was a question of fact for the trial court whether the box-spring mattress and miscellaneous articles were in fact a ''hindrance'' to a thorough examination of the premises, and whether, ''by artifice,'' the hole in the wall had been concealed. In the Carpenter case the seller's statement with reference to termites was not believed, and the buyers employed a man to make an inspection, as the result of which, the seller, before the sale, agreed to pay a specified sum to rid the premises of dry rot and termites found by the inspector underneath the house. In the present case the purchaser did not know of the termite condition. In both cases suspicious circumstances might have aroused doubt or distrust. In the Carpenter case the following appears (pp. 74, 75, 76): ''In the exercise of the slightest diligence they would have learned that termites had attacked the woodwork in the attic, a fact which became known to them after they entered into possession. . . . There were other conditions such as the sinking of the foundations and the old and patched condition of the roofs which plaintiffs could have discovered easily if they had made the slightest effort. . . . All of the means of knowledge were at hand. The true condition of the buildings was before them. If they neglected

to discover what was in plain sight the law will nevertheless charge them with knowledge of what they should have discovered. They cannot deny knowledge of the patent defects which existed in the parts of the buildings which they did examine. . . . Plaintiffs were not dissuaded from making a complete investigation by any artifice of defendant and they therefore cannot complain of conditions which they would have discovered if they had pursued their investigation to the end.''

The soundness of the judgment herein hinges upon whether evidence supports the conclusion reached by the trial court. Whether there was deception to the extent of preventing a proper investigation is a question of fact. (*Wells* v. *Lloyd*, 21 Cal.2d 452 [132 P.2d 471].) The weight of the evidence and the credibility of the witnesses were, of course, matters for the court's determination.

In *Shearer* v. *Cooper*, 21 Cal.2d 695 [134 P.2d 764], it was contended by appellant that the evidence showed that the purchaser relied upon his own investigation, and that, the seller having misrepresented one material fact, the buyer was not justified in relying upon other representations. The court there said, pp. 703, 704: ''The defendant cannot be heard to say that his voluntary admission of a mistake prior to the purchase must be deemed to have put the plaintiff on guard as to the truth of other representations. The purpose of the rule invoked by the defendant is to close the door to false claims of reliance by the purchaser. . . . Furthermore, it is not the law of this state that some examination made by the buyer will shield the seller from an action for damages. As was said in *Dow* v. *Swain*, 125 Cal. 674 [58 P. 271], 'Every case must be judged for itself, and the circumstances which warrant or forbid relief cannot be scheduled. If the seller knows the facts (and to that should be added, or if he represents them as known to him), and the buyer is ignorant, and to the knowledge of the seller the buyer relies upon the representations,' there is no reason why relief should not be granted, 'although an imperfect examination was made. It may have been imperfect because of the representations.' ''

The judgment is affirmed.

Peters, P. J., and Knight, J., concurred.