[Civ. No. 12328. First Dist., Div. One. Oct. 1, 1943.]

MARTIN J. HELLER, Plaintiff and Appellant, v. MAY MELLIDAY, Respondent; LILY G. BARRON, Cross-Defendant and Appellant.

Samuel M. Samter and J. J. Posner for Appellants.

Worthington, Park & Worthington and Leonard A. Worthington for Respondent.

KNIGHT, J.—The plaintiff, Martin J. Heller, brought this action in unlawful detainer to recover possession of and to collect the unpaid rental for an apartment house in San Francisco, which he had leased to the defendant May Melliday. By leave of court the defendant filed an amended answer and a cross-complaint for damages, bringing in a new party to the action, namely, Lily G. Barron, plaintiff's sister. The cross-complaint was based on allegations to the effect that the cross-defendants had procured the lease through false representations made prior to and at the time of entering into the lease. The trial was by jury, and a verdict was returned against the cross-defendants for $4,250. Judgment was entered accordingly, but on motion for new trial a conditional order was made reducing the amount of damages to $2,000. The cross-complainant consented to the reduction, and the cross-defendants appeal.

The lease was in writing, and dated January 22, 1940. It provided for a five year term and called for the payment of a monthly rental of $235 up to July 1, 1940, and thereafter at $245 a month. As part of the same transaction the lessee purchased the apartment house furnishings for $1200, made a payment thereon of $600, and as security for the payment of the balance and the monthly rentals as they fell due under

the lease she gave the lessor a chattel mortgage on the furniture. She took possession on February 1, 1940, and thereafter operated the apartment house for 18 months; but she paid the rent for the period covering only the first 14 months; and at the end of the succeeding four months the lessor brought the action in unlawful detainer to obtain possession and recover the unpaid four months rent amounting to $980. The complaint was filed July 19, 1941, and on July 24th the lessee filed a demurrer. On July 29th the lessor obtained an order appointing a receiver, and on July 31st the lessee delivered the keys to the premises to the receiver. On August 2nd the lessee filed an answer to the complaint denying that she was in possession under the terms of the lease or that she was then unlawfully detaining the premises. In support of such denials she alleged in substance that the lessor had failed to perform certain conditions precedent to the execution of the lease, among them being to put the entire premises in a habitable condition; that as a consequence of such failure ''the minds of the parties had never met, and the consummation of said lease by the affixing of the signatures of the parties thereto was a nullity''; that in those circumstances she was liable only for the reasonable rental of the premises; that she had already paid more than that amount, and that on July 1, 1941, she was entitled to a credit of $395. She therefore asked that the relief sought by plaintiff be denied, that an accounting be had, and that the court determine the amount of credit then due her. However, four days later and on August 6th she caused to be served on the lessor written notice of the surrender of the premises; and on August 25th by leave of court she filed the amended answer and her cross-complaint for damages, bringing in as a new party to the action Mrs. Barron, who for two years had been operating the apartment house for her brother under a power of attorney, and who had participated in the negotiations which brought about the execution of the lease. Answering the cross-complaint appellants denied all charges of fraud and interposed several special defenses, including waiver, estoppel, and that it was not a proper cause for the filing of a cross-complaint.

■ One of the several grounds urged for reversal is insufficiency of the evidence to sustain the judgment, the main contention made in this behalf being that no actionable fraud was established, that most of the representations relied upon concern matters of opinion, and that respondent had suffered no damage as a result thereof; also that assuming, but not conceding, that there was fraud in procuring the lease, re-

spondent after the discovery of the fraud waived the right to sue therefor by remaining in possession for some 14 months, paying the rent, collecting the rentals from the subtenants and requesting and receiving favors from the lessor. Resolving all conflicts in the testimony in favor of respondent, we are of the opinion that the evidence is legally sufficient to support the adverse implied findings on the foregoing issues.

The negotiations for the leasing of the premises were initiated in this way: The respondent, Miss Melliday, and her sister, Mrs. Fowlie, for a number of years had been engaged in the business of leasing and operating apartment houses in San Francisco, and respondent desired to acquire the lease of another apartment house. She was ill at the time, and so her sister looked about to select a suitable one for her. The Heller apartment house was located on California Street between Jones and Leavenworth, and contained 12 apartments. As stated, Mrs. Barron was operating the same for her brother, who was then in New York. It had not been advertised for sale or lease, but Mrs. Fowlie, observing it from the outside, thought it might be suitable for their purpose, and she went in and inquired of Mrs. Barron if the owner would consider leasing it. Mrs. Barron replied that she would get in touch with her brother and let them know. Shortly afterwards Heller arrived in San Francisco and thereafter negotiations were carried on which resulted in the execution of the lease. During these negotiations Mrs. Fowlie and respondent inspected part of the premises and three of the apartments, including apartment 12. The negotiations continued for several days, and it was while they were being carried on that the misrepresentations were made. In part they were that the premises were in good shape; that the roof, plumbing and side walls were in excellent condition; that the entire exterior was then being painted and would be completed after the lease was signed; that all of the apartments were in perfect condition and required no repairs as they had just been redecorated; that all of them were furnished similar to apartment 12 which had been shown to respondent. In this connection the evidence shows that respondent asked permission to inspect some of the other apartments, but was told by Mrs. Barron that she did not want to disturb the tenants, and that she asked them to take her word for it, to trust her, that she would promise them and see to it that everything was satisfactory. It was further represented that all of the apartments were occupied; that the total amount of monthly rentals re-

ceived therefrom was $422.50 and that this amount could be easily increased by $40 a month; that the expenses of operation amounted to only about $58 a month, and that if all but one of the apartments were rented respondent would be able to clear a monthly profit for herself of $95 and that with all of the apartments rented the profit would exceed $135 a month.

However, after taking possession respondent ascertained that the total monthly rentals received were much less than the sum represented, that they averaged less than $340 a month, and that the operating expenses exceeded the amount represented, so that during her entire occupancy of the premises she was able to make bare expenses; that only one month did she make more than $11. In this connection there is evidence showing that while the negotiations were being carried on Mrs. Barron had instructed one of the tenants who was about to vacate to avoid meeting respondent or talking with her, in return for which Mrs. Barron gave the tenant free rent to remain in the house until after the lease was signed. Moreover, shortly after respondent took possession, three of the tenants moved out, and Mrs. Barron knew, before the lease was signed, that they were about to leave. After the tenants had gone respondent was afforded the opportunity to inspect the apartments they had vacated, and found them to be in bad condition. Among other things the walls and ceilings were in such bad shape that the apartments were not fit to re-rent; and the furnishings therein were far inferior to those in apartment 12; consequently respondent at much expense to herself had to redecorate the apartments and fix them up before they could again be rented, one of them remaining vacant for five months. Later on respondent learned that the other apartments were in bad condition and had to be repaired and redecorated. In all she had to do over nine out of the twelve apartments, at an expense to her of $150 apiece. Furthermore, soon after respondent took possession, the painting of the exterior stopped, and finally in the early spring of 1941 the rain came through the roof and the side walls into nine of the apartments.

Meanwhile and during the first few months of her tenancy respondent and her sister complained to Mrs. Barron, who continued to live in the apartments, but Mrs. Barron did nothing about it; and when in the early spring of 1941 the rain came through the roof and side walls, she again complained to Mrs. Barron, who then moved out of the apartments, and referred respondent to the agents of the premises.

Respondent demanded of them that the premises be put in an inhabitable condition, but nothing was done, and so in May, 1941, respondent began withholding the rent. Finally repairs were made, but shortly after they were completed respondent was served with notice of eviction, which was immediately followed by the filing of the action in unlawful detainer.

In view of the foregoing facts and circumstances we are of the opinion that it cannot be held as a matter of law and contrary to the conclusions reached by the jury and the trial court, that a case of actionable fraud has not been established, or that respondent by her acts and conduct waived her right to sue for damages sustained as a result of the fraud.

Appellants point out that it was during the first four months of her tenancy that respondent ascertained that the condition of the apartments and the amount of rentals received therefrom were not as represented, and that notwithstanding she made complaint at the time she continued in possession and to operate the apartment house and pay the rent for approximately a year. However, the evidence shows that during all of that time and up to the spring of 1941 respondent was seriously ill and much of the time was confined to her bed or to her apartment, and she stated that it was because of her illness and the fact that she had invested a large sum of money in fixing up the apartments and refurnishing them with some of her own furniture that she thought she would try to continue on; but that when in the spring of 1941 she discovered that the roof and walls were in such disrepair that the rain began coming through into nine of the apartments, she concluded to do something about it. The jury and the trial court evidently accepted and acted upon her explanation; and since the question of waiver of the right to sue for fraud is primarily, at least, one of fact (*French* v. *Freeman,* 191 Cal. 579 [217 P. 515]), we cannot say here, as a matter of law, that respondent intended to and did waive her right to sue for the fraud. In any event, she did not ascertain that the representation concerning the roof and walls was false until early in the spring of 1941, when the rain came through in nine of the apartments; therefore, even though prior thereto she had learned of certain conditions indicating that she had been deceived, such knowledge did not necessarily deprive her of the right afterwards to sue for fraud upon the discovery that another material representation upon which she relied was false. (*Shearer* v. *Cooper,* 21 Cal.2d 695 [134 P.2d 764]; *Kramer* v. *Musser,* 57 Cal.App.2d 942 [136 P.2d 74].)

The facts of the cases cited by appellants on this issue are essentially different from those here presented, and for that reason we do not deem them in point.

■ We are of the opinion also that accepting as true the evidence adduced in behalf of respondent, it is legally sufficient to sustain an award of damages in the sum of $2,000. It is true that during the time respondent was operating the apartment house the total gross income therefrom was approximately $6,100 and that the amount of rent paid the lessor during that same period was only $3,370. But as already pointed out, there is the testimony of respondent that after paying the operating expenses, there was only one month that she cleared more than $11; whereas, based on itemized statements shown respondent during the negotiations for the lease, it was represented that the net earnings would range from $95 to $135 a month. Furthermore, the evidence in behalf of respondent shows that as a direct result of the misrepresentations as to the condition of the apartments, and in order to make them rentable, she was obliged to fix over nine of them at a cost to herself of $150 apiece. Then again, under the pleadings it was within the province of the jury to award punitive damages; and since a general verdict for damages was rendered, and the trial court in its conditional order reducing the amount thereof made no segregation, it cannot be said that no portion of the final award did not represent an allowance of punitive damages.

■ Appellants urge also, as one of their main points, that it was error for the trial court to grant leave to file a cross-complaint for damages, bringing in a new party, subsequent to the filing of the original answer. The contention is without merit. It is doubtless the general rule that neither a counter-claim nor a cross-complaint is permissible in an action in unlawful detainer (*Arnold* v. *Krigbaum,* 169 Cal. 143 [146 P. 423, Ann.Cas. 1916D, 370]; *Schubert* v. *Lowe,* 193 Cal. 291 [223 P. 550]), the purpose of the rule being to prevent tenants who have violated the covenants of their leases from frustrating the extraordinary remedy provided by statute for the restitution of the premises (*Smith* v. *Whyers,* 64 Cal.App. 193 [221 P. 387]). But the courts have held that such rule is not absolute, and that a counterclaim or cross-complaint may be maintained where it appears that prior to the joining of the issues of fact the tenant has voluntarily surrendered possession of the premises and the issue of possession is thus removed from the case (*Samuels* v. *Singer,* 1 Cal.App.2d 545 [36 P.2d 1098]; *Servais* v. *Klein,* 112 Cal.App. 26 [296 P.

123]) ; and this is such a case. As already pointed out, on July 31, 1941, respondent turned over the keys to the receiver and moved away from the premises; and on August 6, 1941, she caused to be served on the lessor a written notice of surrender of the premises. Thus it appears that so far and as completely as was possible for her to do so, respondent at the time she asked leave to file the cross-complaint had relinquished possession of the property and, so far as the unlawful detainer action was concerned, joined issue only on the question as to whether she was liable for the payment of the four months' rent. In that state of the pleadings it cannot be said that the filing of the cross-complaint in any manner frustrated the lessor's remedy for the restitution of the premises.

Appellants argue that since it appeared from the allegations of respondent's original answer that she was contesting the lessor's right of possession she was precluded thereafter from filing a cross-complaint even though prior to the filing thereof there had been an actual surrender of the premises and it so appeared from the allegations of the amended answer. As said, however, in *Servais* v. *Klein, supra,* the rule that a cross-complaint or counterclaim may not be interposed in an action in unlawful detainer is an exception to the general rule allowing such pleadings to be filed in other cases, and that the exception "should not be extended beyond the reason which lies behind it. That is, the exception should not be invoked to nullify the general rule in cases where there is no basic reason for the existence of the exception"; and the court then went on to point out that the denial of leave to file a cross-complaint or counterclaim would necessarily result in a multiplicity of suits because in any event the cross-complainant is entitled to enforce his rights in an independent action, and that therefore such leave should not be denied "except in those cases in which it is necessary, upon reason, to enforce the rule against the filing of pleadings by defendants asking affirmative relief." Here the record shows that before the issues of fact were finally joined in the unlawful detainer suit and long prior to the commencement of the trial of the action, respondent had actually turned over the possession of the premises to appellants' agents, which eliminated the question of the recovery of possession from the unlawful detainer action and in effect resolved that action into one for the recovery of the unpaid rent. That being so, there would be no legal reason for requiring respondent to prosecute her claim for damages in an independent action.

Relying on the case of *Greene* v. *Kline*, 24 Oh.Cir.Ct. N.S. 177, appellants further contend that respondent on July 28, 1941, incapacitated herself from making a valid surrender by accepting rent from an occupant of one of the apartments which entitled the occupant to remain until August 28, 1941. An examination of that case shows, however, that all that was held therein, so far as we are here concerned, is that where upon surrendering possession a lessee leaves a subtenant in possession of part of the premises, the lessee is accountable to the lessor for the rent for that part not surrendered. In other words, such a situation calls merely for an accounting of rent for which, under some circumstances, a tenant would be liable even though he was not in possession.

■ Appellants' final contention is that the court erroneously instructed the jury. But the objections urged are obviously technical, and in our opinion are not meritorious. The first one challenged was a general instruction outlining the nature of the case to the jury, and it contained the statement that "it was admitted that the tenant herself surrendered the possession." Even though it was not so admitted, the evidence shows beyond question that such was the fact; consequently no harm to appellants resulted from the statement. ■ In the second challenged instruction the jury was told that it could award damages to the respondent "in such amount as in your judgment feel she has suffered by reason of the fraud alleged in her cross-complaint." Appellants complain of the use of the word "feel"; but obviously it was intended to be used synonymously with the word "believe," and was doubtless so understood by the jury. ■ The third one objected to was based on respondent's theory that a relation of trust and confidence existed between Mrs. Barron and respondent; but it was not error to give the instruction because there was some testimony given in support of such theory. ■ The fourth instruction complained of related to the measure of damages and used the word "profit," but when this instruction is read and considered along with the others given on the subject of damages, no error appears.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 29, 1943.