[Civ. No. 6517.    Third Appellate District.—March 10, 1941.]

LAKESIDE PARK ASSOCIATION OF KELSEYVILLE (a Corporation), Respondent, v. GLENN KEITHLY, Appellant.

Ralph V. Devoto for Appellant.

Lovett K. Fraser for Respondent.

THOMPSON, J.—In a suit for unlawful detention of real property under section 1161 of the Code of Civil Procedure, the plaintiff recovered judgment against the defendant and cross-complainant for unpaid rent in the sum of $111.80, and for restitution of the property in the event that sum was not paid within five days after notice of the entry of judgment. The rent was not paid. In his cross-complaint the defendant asked for specific performance of an option contained in the lease authorizing him to purchase the property "upon the same terms and conditions" it was offered for sale to any other proposed purchaser. The judgment directed that the defendant take nothing by reason of his cross-complaint. From that judgment this appeal was perfected.

June 17, 1920, F. J. Norton and other residents of Lake County organized a non-profit corporation under the name of Lakeside Park Association of Kelseyville, to purchase land and operate a recreation park in that vicinity. Mr. P. Q. Robinson was elected president of the company. Many residents of that community became members of the association and contributed to the enterprise the sum of $25 apiece for that purpose. The wife of the defendant Glenn Keithly was a member of the company. June 10, 1920, the association bought from the Yolo Water and Power Company 62 acres of land at Kelseyville on Clear Lake for the agreed sum of $5,000 to be used as a recreation park. The sum of $2,500 was then paid in cash toward the purchase price. By consent of the association the title to the land was taken and held in the name of F. J. Norton as trustee for the company. Two years later ten acres of that land were sold and conveyed to George Kitto for $1,250. That sum was applied toward the payment of the balance of the purchase price. July 1, 1935, there remained unpaid on the purchase price of the land a balance of $1,474.25, including principal and interest. On the last-mentioned date, with the consent of the association, Norton executed a written five-year lease of the remaining 52 acres of land to the defendant, Glenn Keithly. At the same time, and as a part of that transaction, Keithly loaned to the lessor the sum of $1,474.25, with which to

pay the balance of the original purchase price of the land. Norton executed and delivered to him his note for that amount to be paid in five years at seven per cent interest per annum. The note was secured by a trust deed on the same premises. The lease provides for annual rental to be paid in an amount *"equivalent to* seven (7%) per cent interest on Fourteen hundred seventy four and 25/100ths ($1474.25) Dollars", together with all taxes assessed against the land. It is also provided that so long as the aforesaid indebtedness remains unpaid, the rental for the land shall be credited upon the note to offset the interest due thereon. For failure to pay the rent when due, or for breach of any other covenant of the lease, the lessee reserves the right to re-enter the premises, or to terminate the lease, at his option. The instrument provides that the lessor may sell the demised premises, or any part thereof, at any time during the term thereof, after first granting to the lessee an option to purchase the land *"upon the same terms and conditions* as then being offered to any other *intending purchaser."*

October 19, 1938, F. J. Norton, the trustee, conveyed the 52-acre tract to the Lakeside Park Association. Soon thereafter, Mr. P. Q. Robinson, the president of the company, proposed to the Board of Supervisors of the County of Lake, to deed the land to that county and to donate to it the association's equity in the 52-acre tract if the county would assume the balance of the indebtedness for the purchase price of the land, *and maintain it as a perpetual public park.* He said in relation to that proposition:

"I recapitulated a little of the history of the park; told them we were proposing to make a perpetual public park for the county under the name of the Lakeside Park, but the depression came along and hard times and we were unable to make the payments and in order to safeguard our rights and perpetuate the park *we would donate our $3500 equity in the park* if they would assume the indebtedness *and take the park under their management as a perpetual park."*

The board did not accept the proposition, but merely agreed to "take it under advisement". It appears that the board of supervisors never did accept the proposition. The only action which the board took in that regard was to adopt a resolution authorizing one of its members to consult with the district attorney with respect to the proposition. September

26, 1938, Glenn Keithly wrote a letter to Mr. Norton, saying that he had learned the property had been offered for sale to Lake County for the sum of $1,474.25, and that he elected to accept his option to purchase the property at that price. The lessee did not offer to fulfill the condition attached to that proposal for the county to agree to maintain the property as a public park. The offer of the appellant to purchase the land for the sum of $1,474.25 was therefore refused. November 7, 1939, the association served written notice on the lessee under section 791 of the Civil Code demanding possession of the property for breach of the covenant unless the stipulated rent, in the sum of $34.40 to March 1, 1939, was paid within three days thereafter and also demanding possession unless the further sum of $103.40 was paid for rent due to the time of the expiration of the lease, July 1, 1940. The defendant failed and refused to pay or credit to the lessor on the note any part of the rent. March 6, 1939, the association paid the defendant the full amount of its indebtedness, including principal and interest, amounting to the sum of $1,521.84, which was accepted by him. Satisfaction of the obligation was then duly executed and recorded.

This suit for unlawful detainer was then commenced. The defendant filed an answer to the complaint denying the material allegations thereof, and he also filed a cross-complaint in which specific performance of his alleged option to buy the land for said sum of $1,474.25 was demanded, on the theory that an unconditional sale of the land for that amount had been offered to the county of Lake. The cause was tried by the court sitting without a jury. Findings were adopted by the court favorable to the plaintiff in every respect. Judgment was rendered against the defendant as previously stated. From that judgment this appeal was perfected.

This suit for unlawful detainer was properly instituted, after notice was served as provided by law for failure to pay rent at the time and in the manner specified in the lease. (*Mariposa Commercial & Mining Company* v. *Peters,* 215 Cal. 134 [8 Pac. (2d) 849]; 15 Cal. Jur. 782, sec. 200.) In the present case there is no doubt the lessee was in default of payment of the installment of rent which was due under the provisions of the lease for the year ending July 1, 1939.

The appellant, however, does not contend he was not in default in his payment of rent, nor does he assert the lessor

failed to properly exercise the option to terminate the lease by serving notice thereof in the manner required by law. The appeal is prosecuted on the sole theory that the lessee had a right under his option to purchase the land for the sum of $1,474.25 for the reason that it had been unconditionally offered to the county of Lake for that price. The evidence is adequate to support the findings and judgment of the court that the lessor is entitled to possession of the property for failure on the part of the lessee to pay rent as provided by the terms of the lease.

The ground for reversal of the judgment urged by the appellant is that he is entitled to specific performance, under the provisions of the lease, for the purchase of the property for the sum of $1,474.25 independently of any condition to maintain the tract as a public park. This problem necessitates a construction of that provision in the lease which clearly reads that the lessor may *sell* the land, or any portion thereof, during the term of the lease, after first giving the lessee an opportunity to refuse to purchase it *"upon the same terms and conditions* . . . offered to any other *intending purchaser."* That issue was presented by the cross-complaint which was filed by the defendant.

The rule is firmly established in California that neither a cross-complaint nor a counterclaim may be properly filed in a suit for unlawful detention of property, even though the alleged cause therein contained grows out of the subject-matter involved in the original suit. (*Schubert* v. *Lowe,* 193 Cal. 291 [223 Pac. 550]; *Knight* v. *Black,* 19 Cal. App. 518, 527 [126 Pac. 512]; *Rydell* v. *Beverly Hills Pr. & Pub. Co.,* 88 Cal. App. 216 [262 Pac. 818]; 15 Cal. Jur. 865, sec. 292.) The reason for this rule is that the statute provides for the action of unlawful detainer as a summary proceeding, to secure possession of premises which are wrongfully withheld from the owner, and that the injecting of other issues extrinsic to the right of possession may defeat the very purpose of the statute.

Since no motion to strike the cross-complaint from the record was made, and the issues presented therein were determined by the court without objection, we are not disposed to question that right on this appeal. The court found that the cross-defendants did not sell or offer to sell to the county of Lake the property in question for the sum of $1,474.25,

within the meaning of the clause in the lease with respect to sales of property. Such a disposal of the property was not contemplated by the parties to that instrument. On the contrary the court determined that the lessor offered to give the property to the county on condition that it would assume the indebtedness and pay the balance of the agreed purchase price of the land, and that the county would perpetually maintain the property as a public park. The court also found that the cross-complainant never did agree to exercise his option to purchase the land *upon the same terms or conditions* for the reason that he did not consent to maintain a public park thereon. The court further found that the price for which the cross-complainant offered to purchase the property, to wit, $1,474.25, was neither a fair nor an adequate value of the land. Specific performance was thereupon denied.

We think the foregoing findings and judgment are adequately supported by the evidence. The option in the lease, upon which the cross-complainant relies for specific performance, clearly contemplates an absolute sale of the property, or some portion thereof, as distinguished from a gift or donation of a large proportion of the value of the land, upon condition that the grantee would maintain it perpetually as a public park. The moving consideration for that proposed conveyance to Lake County was to accomplish the very purpose for which the Lakeside Park Association was organized, namely, for the creation and maintenance of a recreation park for the benefit of the public. That was the specific condition upon which the offer to convey the land to Lake County was proffered. Moreover, the offer was not accepted by the Board of Supervisors. The county was not an "intending purchaser". There is no evidence that the board ever intended to accept that offer.

We are of the opinion the respective parties to the lease did not intend or contemplate that a conveyance of the property, under such circumstances, would constitute a *sale* which would entitle the lessee to purchase it upon the same terms. Certainly, in view of the express terms of the lease, it was not intended that the lessee would be permitted to purchase 52 acres of land costing $5,000 for the sum of only $1,474.25, free of the condition requiring it to be maintained as a per-

petual public park, which was the chief object of the lessor in making that proposition to the Board of Supervisors.

In determining the meaning of a clause contained in a lease, the same rules of construction apply which are controlling in construing other contracts. The entire instrument should be read together to determine the purpose and intention of the parties in that regard. (15 Cal. Jur. 625, sec. 31.) In the present case it must be assumed the appellant knew that the incorporation of the park association and the acquiring of the land in question were accomplished solely for the purpose of maintaining a public recreation park. His own wife was a member of that association. The association had been in existence for several years. Numerous citizens in that small community were members of the company and were interested in that public enterprise. He must be presumed to have known the importance of attaching the condition of maintaining the park to the lessor's offer to convey the land to the county of Lake upon its assuming to pay only a small portion of the actual value of the land.

Moreover, it is a primary requisite to the enforcing of specific performance that the consideration therefor shall be adequate and the contract reasonable. (*Haddock* v. *Knapp*, 171 Cal. 59 [151 Pac. 1140] ; 23 Cal. Jur. 438, sec. 16.) The inadequacy of consideration is held to be sufficient ground for denying specific performance. Clearly, the amount offered by the appellant for the land in question was inadequate. The evidence is undisputed that it cost $5,000. The association had already paid approximately $3,500 toward the purchase price. In the absence of evidence to the contrary, that furnishes *prima facie* proof in support of the findings of the court that $1,474.25 is so grossly inadequate as to warrant the court in refusing to grant specific performance.

The judgment is affirmed.

Tuttle, J., and Pullen, P. J., concurred.