[Civ. No. 13715.   First Dist., Div. Two.   Oct. 20, 1948.]

A. T. STROM et al., Appellants, v. UNION OIL COMPANY (a Corporation), Respondent.

R. A. Rogers for Appellants.

Brobeck, Phleger & Harrison and Tinning & De Lap for Respondent.

NOURSE, P. J.—This is an appeal by plaintiffs A. T. Strom and Ethel Strom, husband and wife, from a judgment in favor of defendant, Union Oil Company of California, herein further referred to as Union Oil Company, in an action in unlawful detainer.

When appellants acquired the service station property subject of this action Union Oil Company was lessee under a duly extended lease from the former owners, Mr. and Mrs. Wells, which, as extended, was to run until September 31, 1951. The lease included some equipment; an appendix specified what equipment was owned by the lessor and what by the lessee. The monthly rent of $140 payable in advance was being paid regularly by mailing checks to a bank to whom the Wells had assigned.

On July 17, 1946, Union Oil Company was informed by the bank of the release of the assignment. Prior to that date respondent had been told of an intended sale of the property and there had been some conversations with the prospective purchaser, appellant A. T. Strom, who wanted to see the lease. After receipt of the release Mr. Andrews of Union Oil Company telephoned Mr. Wells more than once asking for new payment directions. Mr. Wells promised soon to send directions by letter. In the meantime appellant A. T. Strom had some more conferences with Union Oil Company in which he tried to persuade it to consent to an increase of the rent. He testified that when these conferences did not lead to any result, he left, repeating twice to a Union Oil Company official: "The only thing that I have to say, Mr. Newhoff, is that you live up to the terms of this lease to the letter," and he commented further, "All I wanted was the property back." He did not give any definite information or direction. Only by letter of Mr. and Mrs. Wells of August 21, 1946, was Union Oil Company informed that the premises had been transferred to Mr. A. T. Strom on July 8, 1946, that the rental paid on July first had been turned over to him and that all further payments had to be made to Mr. A. T. Strom of 1229 Nevin Avenue, Richmond, California. At the same time the transfer of a hoist located on the premises from Union Oil Company to the owner against payment of $75 by Mr. Wells

was arranged. Union Oil Company prepared a new appendix to the lease accordingly and by letter of August 29th, 1946, sent it in duplicate for signature to Mr. Strom at the Nevin Avenue address. In the same letter Union Oil Company referring to the letter of Mr. and Mrs. Wells, asked to be advised whether title to the premises was taken in joint tenancy or as Mr. Strom's separate property so that payment of rentals could be made in the proper manner. Mr. Strom testified that he received the letter but did not answer it. Instead on September 6, 1946, appellants sent a letter to Union Oil Company at its San Francisco office requiring it to pay rent for the months of August and September, 1946, or deliver up possession of the premises within three days after service of that notice, and electing forfeiture of the lease in case of noncompliance. The letter did not contain any direction as to place or mode of payment. The letter reached the office on September 7th, a Saturday, on which day the office was not open for regular business. The next Monday, September 9th, Union Oil Company sent two checks for the two months' rent by registered mail to appellants at the 1229 Nevin Avenue address, which Mr. Strom admitted was his business and mail address and the residence of his mother. On September 10th, the notice to pay rent or quit was personally served at Union Oil Company's office at San Francisco and on the leased premises. The same morning the registered letter was offered by a postman at 1229 Nevin Avenue where Mr. Strom's mother refused to sign for it. The letter therefore went back to the postoffice; the same day a notice of arrival was left by the postman in the mail box at 1229 Nevin Avenue and a second notice was delivered in the same manner on September 13th. It is conceded that only with the service on September 10th the requirements of section 1162 of the Code of Civil Procedure as to service were fulfilled and that the three days' period included September 13th. Appellants did not claim the registered letter at the postoffice nor did they communicate in any manner with respondent. On September 20, 1946, the letter was returned to respondent "unclaimed." Respondent tried to contact appellants personally at the Nevin Avenue address but was referred to a ranch near Concord where on September 24, 1946, the checks were personally tendered and refused. Asked why he did not accept the checks when mailed to his mailing address Mr. Strom answered, "They were received too late." On September 27, 1946, the summons in this action in unlawful detainer was

served on respondent, the complaint having been filed on September 19, 1946. On October 7, 1946, an amount of $420 in cash was tendered to appellants personally on the Concord ranch for three months' rent including the month of October and when appellants again refused the amount was immediately deposited in the name of appellants in the Concord branch of the Bank of America and written notice served on them.

The trial court made findings partly to the effect that respondent at all times has been and now is ready, able and willing to pay all monthly instalments of rent to the persons legally entitled thereto, that its repeated tenders of payment were wrongfully refused by plaintiffs with the intent to illegally, inequitably and fraudulently claim a forfeiture of the lease and that respondent was not holding over after default in payment of any rent.

On this appeal appellants do not discuss or mention the above finding of their bad faith, but argue that respondent was in default because its rental debt was not extinguished within the three-day period as respondent tendered checks instead of money, sent the checks by mail without checking delivery instead of making personal tender and did not keep the tender alive by deposit in a bank as provided by section 1500 of the Civil Code within the three-day period. However, we think that the finding of bad faith, which is supported by the evidence showing the facts, as stated hereinbefore, is of primary importance where appellants try to enforce a forfeiture.

In *Saxton* v. *Para Rubber Co.*, 166 La. 866 [118 So. 64] in which case a lessor called for rent at lessee's store on a day on which he knew it to be closed and thereafter preferred to file a suit for ejectment instead of accepting a certified check available from the day the rent was due, the court said: "It is quite true that the payment of the rent in accordance with the terms of the lease is one of the essential obligations of the lessee, and the failure of the lessee to properly discharge this obligation is a legal cause for dissolving the lease. But this presupposes that the lessor is desirous and willing that the lessee should pay his rent promptly, and will facilitate and not hinder him in doing so; that the lessor is not endeavoring merely to entrap his lessee into a technical breach of the lease.

"The punctuality required of the lessee in the payment of his rent has been designed solely for the protection of the

lessor, and cannot be allowed to be converted in his hands into a means of entrapping and oppressing the lessee.''

In *Cleveland* v. *Salwen,* 292 Pa. 427 [141 A. 155, 157], a case in which lessors tried to forfeit the renewal of a lease on the ground of alleged breaches by lessee in the course of the original lease, the following is stated as an important ground for upholding the judgment for lessee: '' 'The issue turned on the question of lessors' good faith in attempting to escape from the covenant of renewal. That being found against them, the adverse award necessarily followed.'

''The real purpose to obtain a forfeiture is made emphatically manifest by the admission of one lessor that:

'' 'We talked about selling the place at the expiration of the lease, and thought we could get a better price for it without a tenant in it.'

''Here certainly was no proof of good faith on the part of the property owners in their efforts to oust their tenants. (citation.) 'Forfeitures are odious in law, and are enforced only where there is the clearest evidence that that was what was meant by the stipulations of the parties. There must be no cast of management or trickery to entrap the party into a forfeiture. (citation)' '' Compare also *Schwarz* v. *Sorbello,* 139 N.J.Eq. 542 [52 A.2d 683, 687]; *Farmer* v. *Pitts,* 108 Neb. 9 [187 N.W. 95, 24 A.L.R. 719, 722]; *Paducah Home Oil Co.* v. *Paxton,* 222 Ky. 778 [2 S.W.2d 650, 56 A.L.R. 797, 799]; and *Dunlap* v. *Macke,* 233 Ala. 297 [171 So. 721, 725].

No California case in which forfeiture of a lease was denied because of bad faith of lessor has been found, but in *McCue* v. *Bradbury,* 149 Cal. 108 [84 P. 993], our Supreme Court gave a comparable decision. In that case McCue, debtor under a deed of trust, offered to pay principal and interest one day before due at a certain bank. Bradbury, the creditor, answered, ''All right, but it is not due until the 23rd,'' and he did not appear on the 22d at the bank indicated. McCue then bought certificates of deposit at the same bank for the amounts required and had served on Bradbury a notice that the amount due had been deposited and would be paid over by the bank against reconveyance of the premises. Bradbury did not communicate with McCue but stealthily tried to bring about a sale of the premises under the trust deed. In an action to restrain the sale and compel Bradbury to accept the amount deposited McCue was successful and the Supreme Court affirmed stating in part at pages 112-113:

"Appellants' principal contention upon appeal is that the acts of the McCues looking to the payment of the obligation to Bradbury were entirely insufficient as a legal tender of payment, and that this being so, and plaintiffs being in default under the terms of the trust, Bradbury's trustees were justified in proceeding with the sale of the property to extinguish the McCues' obligation. But in this appellants mistake the gist of the action. The action is not based upon the assumption that the tender actually made was a full and complete legal tender, but upon the contention that the acts of the defendant William B. Bradbury, in assenting to the proposed mode of payment, in failing to make objection in any form to the tender as made, and in doing all this in bad faith, to lull the plaintiffs into a fancied security, with the end in view of declaring a forfeiture and forcing a sale of their property—that these acts and this conduct are sufficient to induce a court of equity to relieve against the forfeiture, and to compel defendant Bradbury to·accept, in full satisfaction of his demand, the amount due and payable upon the twenty-fourth day of October, which amount the plaintiffs then and ever since have stood ready, willing, and able to pay. It is based upon the equitable principle, often invoked and as often upheld, that equity will refuse to enforce a forfeiture at the instance of one who has obtained the strictly legal right to it by fraud, deceit, or any other form of oppressive practice; and, upon the other hand, will relieve the innocent when such a forfeiture so secured is sought to be enforced."

Equitable principles apply in this state also where a forfeiture is sought in an action in unlawful detainer. In *Knight* v. *Black,* 19 Cal.App. 518, 525-26 [126 P. 512], it is said: "By this action the plaintiff is seeking to have a forfeiture declared because of the alleged default in a condition of the lease, and although the remedy provided by law for the breach of such a condition is summary in principle and process, nevertheless the very nature of the action, involving, as it does, a forfeiture, appeals to the equity side of the court and in turn requires 'a full examination of all of the equities involved to the end that exact justice be done.' (*Gray* v. *Maier etc. Brewery,* 2 Cal.App. 653, [84 P. 280].)"

Let us now examine these equities. With respect to appellants there is no doubt that they could have had timely payment if they had so desired, but that they were intentionally evasive and uncooperative, hoping thereby to induce some technical shortcoming on which to terminate a lease which

they thought disadvantageous. ■ How serious are in comparison respondent's shortcomings, if any, that appellants succeeded in bringing about? Appellants complain that respondent mailed checks for the rent instead of tendering money in person. The lease does not contain any place or mode of payment of rent. Payment of rent to the original lessor had been made by mailing of checks to his assignee. Appellant was entitled to continue payment by mailing of checks so long as he had not been notified that this form of payment was no longer acceptable. The change of title of the property to appellants did not in any way change or affect the lease. *Macdonough* v. *Starbird,* 105 Cal. 15, 19 [38 P. 510]. If the payment by mailing of check, a normal mode of payment though not a legal tender, was not acceptable to appellants, as it had been to their predecessors, they should have notified respondent to that effect. ■ Neither was respondent after the mailing under duty to take special measures to check timely receipt of the checks. "The ordinary principles of reason, common sense, and justice should govern in questions of this kind. The lessee, in law, had a right to assume that the Postoffice Department would do its duty and deliver the envelop containing the rent in due time, and that the lessor would, in justice, accept such rent; and if for any reason it was not received or delivered the lessee should, as a matter of ordinary fairness and justice, be advised of such fact and have a chance to remedy the same." *Farmer* v. *Pitts, supra,* p. 722 [24 A.L.R.]. This principle was held applicable even where the letter containing the rent was lost in the mail. *Paducah Home Oil Co.* v. *Paxton, supra.* It must govern a fortiori here, where the mail functioned correctly and the fact that the checks did not reach appellants was solely attributable to circumstances for which they were responsible. No further action of any kind could be expected from respondent until it was informed, by the return of the unclaimed letter, of the fact that the payment had not been effectuated. ■ If respondent's action is open to any criticism it would be that the deposit of the rent in a bank (on Oct. 7, 1946) did not follow soon enough after the checks were returned (on Sept. 20, 1946). However the delay did not cause any prejudice or make any difference to appellants as they had then already launched the action in unlawful detainer at which they had been aiming ever since respondent refused increase of rent. The shortcoming of respondent is trivial compared to appellants' bad faith.

All the equities are in favor of respondent. The many authorities cited by appellants with respect to the requirements of a tender by an obligor are not in point as they do not involve bad faith of the obligee and the weighing of the equities as between them. In accordance with *McCue* v. *Bradbury, supra,* we hold that appellants are not entitled to any payments except of the rents agreed upon.

The judgment is affirmed.

Goodell, J., and Dooling, J., concurred.