[Civ. No. 26025. First Dist., Div. One. Feb. 24, 1970.]

UNION OIL COMPANY OF CALIFORNIA,
Plaintiff and Respondent, v.
JOSEPH CHANDLER, Defendant and Appellant.

## COUNSEL

Maxwell Keith for Defendant and Appellant.

Brobeck, Phleger & Harrison and Richard Haas for Plaintiff and Respondent.

## OPINION

**MOLINARI, P. J.**—Defendant Joseph Chandler appeals from a judgment in an unlawful detainer action restoring plaintiff Union Oil Company of California (hereinafter referred to as "Union") to possession of certain property and awarding damages in favor of Union against Chandler. We find each of the several assignments of error made by Chandler to be without merit. Accordingly, we affirm the judgment.

### Factual and Procedural Background

On November 18, 1966, Union leased a service station in Fremont, California, to Chandler pursuant to a written lease for a period of three years commencing on November 18, 1966 and ending on the 17th day of November, 1969. This lease contained three clauses which are pertinent to this appeal. Clause 2 provided that the term of the lease was three years "subject, however, (a) to sooner termination by Lessee at any time on not less than ninety (90) days' written notice to Union and (b) to sooner termination in accordance with any other provision of this Lease relating to or providing for sooner termination." Clause 9 permitted Union to terminate the lease at any time upon certain specified defaults on the part of Chandler. Clause 10 provided that Union could terminate the lease at any time during the first 12-month period by giving Chandler 30 days' prior written notice of such termination.

On September 18, 1967, Union gave Chandler notice that it was terminating the lease pursuant to clause 10. Chandler did not vacate and the instant unlawful detainer action was commenced. Chandler's answer consisted of a general denial and the assertion of three separate affirmative defenses. The first affirmative defense alleged that no good cause existed for the termination of the lease, that Union acted in bad faith, and that Union had unclean hands. The second affirmative defense alleged that Union was in violation of federal antitrust laws. The third affirmative defense alleged that Union's action was violative of the California antitrust laws.

The pretrial conference order designates the instant action as one for

unlawful detainer and delineates the issues as follows: (1) Whether or not the plaintiff had the right to terminate the lease as of October 17, 1967; (2) the amount of damages, if any, for withholding possession; and (3) the amount of attorneys' fees due plaintiff, if any.

At the trial the court rejected offers of proof on the part of Chandler with respect to the second and third affirmative defenses. The trial court also ruled that the provisions of clause 10 were not ambiguous, but permitted extrinsic evidence on whether or not coercion or unfair dealing was indulged in by Union in the actual execution of the lease. The cause proceeded to trial before a jury, but it was stipulated that the issue of equitable estoppel was an equity question which was to be submitted to the court for its determination. The trial judge announced that he determined the issues of equitable estoppel in favor of Union. The court also announced that since the provisions of clause 10 were unambiguous the interpretation of that provision was a matter for the court. The trial court thereupon announced that under clause 10 Union was entitled to terminate the lease without a showing of good cause and that Union was entitled to possession of the premises. Counsel for the parties then stipulated as to the amount of the damages which had accrued, and Chandler stipulated that he would surrender possession of the premises on March 8, 1968, the following Friday. Pursuant to the stipulation the trial court made its order that Chandler vacate the premises on March 8, 1968. Counsel for Union was thereupon directed to prepare findings of fact and conclusions of law, and the form of judgment.

Other pertinent facts will be set out hereafter where germane to the discussion.

### Contentions

Chandler makes five assertions of error. He asserts that the trial court erred (1) in determining that clause 10 of the lease required no showing of cause by Union prior to termination; (2) in excluding Chandler's offer of proof that Union's termination of the lease was in bad faith; (3) in refusing to entertain the issue of promissory fraud; (4) in refusing to submit the issue that the termination of the lease was in furtherance of a plan in violation of the antitrust laws of the United States and the State of California; and (5) in making certain findings of fact beyond the scope of the issues litigated.

■ Union makes the contention that since Chandler agreed to vacate the station voluntarily on March 8, 1968, a voluntary surrender was effected, thus making the issue of possession moot. We dispose of this contention here. The record discloses that, although formal judgment had not been entered, the trial court had announced that Union was entitled

to a judgment for possession, and that the stipulation agreeing to surrender possession two days later was made in order to minimize damages. The record is clear that the stipulation was entered into under the compulsion of the trial court's announced decision which merely required the formalization incident to the preparation of findings of fact and conclusions of law, and the judgment. The record discloses, moreover, that the trial court granted a stay of execution pursuant to stipulation until March 8, 1968. We observe, moreover, that the judgment subsequently entered provides that Union was restored to possession and that Chandler was ordered to vacate no later than March 8, 1968. Under the circumstances, it is clear that Chandler was deprived of possession by the judgment of the court. Accordingly, Chandler did not waive his right to appeal on the issue of possession. (See *Schubert* v. *Bates,* 30 Cal.2d 785, 791-792 [185 P.2d 793].)

## Nature of Unlawful Detainer Proceeding

■ Before entering upon a discussion of Chandler's contentions, it is appropriate to observe that an unlawful detainer action is a summary proceeding, the primary purpose of which is to obtain the possession of real property in the cases specified by statute. (*Fontana Industries, Inc.* v. *Western Grain etc. Co.,* 167 Cal.App.2d 408, 411 [334 P.2d 611]; *Markham* v. *Fralick,* 2 Cal.2d 221, 227 [39 P.2d 804]; *Arnold* v. *Krigbaum,* 169 Cal. 143, 146 [146 P. 423, Ann. Cas. 1916D 370]; see Code Civ. Proc., § 1161.) ■ Accordingly, a general rule has emerged that, since the sole issue before the court is the right to possession, neither a counterclaim nor a cross-complaint, nor affirmative defenses, are admissible in an action in unlawful detainer, even though the alleged cause contained therein grows out of the subject matter involved in the original suit. (*Smith* v. *Whyers,* 64 Cal.App. 193, 194 [221 P. 387]; *Arnold* v. *Krigbaum, supra,* at p. 145; *Lakeside Park Assn.* v. *Keithly,* 43 Cal.App.2d 418, 422 [110 P.2d 1055]; *Knowles* v. *Robinson,* 60 Cal.2d 620, 625 [36 Cal.Rptr. 33, 387 P.2d 833]; *Cheney* v. *Trauzettel,* 9 Cal.2d 158, 159 [69 P.2d 832].) The purpose of this rule is to prevent tenants who have violated the covenants of their leases from frustrating the ordinary and summary remedy provided by statute for the restitution of the premises. (*Abstract Inv. Co.* v. *Hutchinson,* 204 Cal.App.2d 242, 248 [22 Cal.Rptr. 309]; *Lakeside Park Assn.* v. *Keithly, supra; Knowles* v. *Robinson, supra.*) As observed in *Lakeside Park, supra,* and reiterated in *Knowles, supra,* "The reason for this rule is that . . . the injecting of other issues extrinsic to the right of possession may defeat the very purpose of the statute." (P. 422.) Accordingly, under this general rule a tenant is not permitted to interpose a defense usual or permissible in ordinary actions at law. (*Arnold* v. *Krigbaum, supra,* at p. 146.)

■ The general rule, however, has two recognized exceptions. The first exception is where the tenant has voluntarily surrendered possession before the issues of fact are finally joined. (*Servais* v. *Klein,* 112 Cal.App. 26, 36 [296 P. 123]; *Heller* v. *Melliday,* 60 Cal.App.2d 689, 697 [141 P.2d 447].) The basis for this exception is that since the right to possession is no longer in issue, the rationale underlying the general rule evaporates and the action thus becomes an ordinary one for damages. The second exception is that which permits the court to inquire into equitable considerations in an unlawful detainer suit. (See *Schubert* v. *Lowe,* 193 Cal. 291, 295-296 [223 P. 550]; *Johnson* v. *Chely,* 43 Cal. 299, 305; *Manning* v. *Franklin,* 81 Cal. 205, 207-208 [22 P. 550]; *Pico* v. *Cuyas,* 48 Cal. 639, 642; *Gray* v. *Maier & Zobelein Brewery,* 2 Cal.App. 653, 658 [84 P. 280]; *Knight* v. *Black,* 19 Cal.App. 518, 525-527 [126 P. 512]; *Rishwain* v. *Smith,* 77 Cal.App.2d 524, 531 [175 P.2d 555]; *Strom* v. *Union Oil Co.,* 88 Cal.App.2d 78, 83 [198 P.2d 347]; *Abstract Inv. Co.* v. *Hutchinson, supra,* 204 Cal.App.2d 242, 247-248.) In *Abstract Inv., supra,* it was observed that "An equitable defense is '[a] defense to an action on grounds which, prior to the passing of the Common Law Procedure Act (17 and 18 Vict. c. 5) would have been cognizable only in a court of equity.' [Citation.]" and that "It has also been construed to mean a defense which a court of equity would recognize or one founded upon some distinct ground of equitable jurisdiction. [Citation.]" (P. 248.) In *Schubert, supra,* the Supreme Court cited, with approval, language in *Gray, supra,* that in an unlawful detainer action the equitable powers of the court may not be extended " 'into a full examination of all the equities involved, to the end that exact justice may be done.' " (193 Cal. at p. 295.)

In *Schubert, supra,* the defendant was permitted to raise the equitable defense that the tenancy was not a month-to-month tenancy as alleged by the plaintiff, but that his occupation was under an oral agreement to lease. Similarly, in *Rishwain, supra,* the defendants pleaded and proved that as a part of the consideration for the purchase of the plaintiffs' mercantile business the plaintiffs agreed to lease the building in which the business was located. In *Johnson, supra,* the tenant was permitted to show that, being already in possession, he was induced to enter into the lease upon which the landlord was relying through deception and imposition practiced upon the tenant by the landlord. The equitable defense urged in *Manning, supra,* was that the relationship was not that of landlord and tenant, but a sale of an interest in property; and, similarly, in *Pico,* that it was a partnership. (See also *Henderson* v. *Allen,* 23 Cal. 519, 521.) In *Gray, supra,* the tenant was permitted to urge that the landlord had acquiesced to a subletting although the lease contained a provision against subletting. The equitable defense set up in *Knight, supra,* was that exact compliance with the security for rent by way of a chattel mortgage on furniture was

impossible and that the tenant had offered to deposit with the landlord gold coin to the full amount of the security. The defense of bad faith, consisting of intentional evasiveness and noncooperation in accepting timely payment of rent, was permitted in *Strom, supra.* In *Abstract Inv., supra,* it was held that the tenant should have been permitted to produce proof of his special defense that his eviction was sought solely on the ground that he was a Negro. In that case the rationale of the court was that the defense upon constitutional propositions and statutes seeking to prevent discrimination and to insure equal protection under the law has its foundation in equitable principles. (204 Cal.App.2d 242, 248.)

### *The Pretrial Conference Order*

■ It is well settled that the pretrial conference order controls the subsequent course of the litigation, that issues not designated in the pretrial conference order are not issues in the case, and that the pretrial conference order supersedes the pleadings where inconsistent with them unless modified at or before trial. (*Oliver* v. *Swiss Club Tell,* 222 Cal.App.2d 528, 541 [35 Cal.Rptr. 324]; *Agricultural Ins. Co.* v. *Smith,* 262 Cal.App.2d 772, 777 [69 Cal.Rptr. 50]; *City of Los Angeles* v. *County of Mono,* 51 Cal.2d 843, 847 [337 P.2d 465]; Cal. Rules of Court, rule 216.) ■ In the present case no request for an amendment or correction was made by either party. Accordingly, this court accepts the pretrial conference order as defining and limiting the issues in the case. (*Continental Constr. Co.* v. *Thos. F. Scollan Co.,* 228 Cal.App.2d 385, 388 [39 Cal.Rptr. 432]; *Baird* v. *Hodson,* 161 Cal.App.2d 687, 689-690 [327 P.2d 215]; *Cal-Neva Lodge, Inc.* v. *Marx,* 178 Cal.App.2d 186, 187 [2 Cal.Rptr. 889]; *California Steel Buildings, Inc.* v. *Transport Indem. Co.,* 242 Cal.App.2d 749, 758 [51 Cal.Rptr. 797]; Cal. Rules of Court, rule 216; cf. rules 215(b), and 218.) ■ In the instant case the pretrial conference order states that the action is one for unlawful detainer and delineates the issue which is pertinent to this appeal as follows: "Whether or not the plaintiff had the right to terminate the lease as of October 17, 1967." Accordingly, in the light of the principles applicable to unlawful detainer actions, that issue is restricted to determining Union's right to possession subject to such equitable defenses as are permitted in such actions.

### *Clause 10*

■ Clause 10 of the subject lease provides as follows: "PROBATIONARY PERIOD: If Lessee has not operated the Station for a period of twelve months prior to the date of the execution of this Lease, then Union may terminate this Lease at any time during the first 12-month period of this Lease by giving Lessee thirty (30) days' prior written notice of such

termination; provided, however, that the 12-month period during which Union may exercise such right of termination shall be reduced by the length of time that the Lessee has operated the Station prior to the date of the execution of this Lease." In contending that the court erred in interpreting this clause to mean that Union had the right to terminate the lease during the first 12-month period of occupancy without any showing of cause, Chandler asserts that it was the intent of the parties that the lease could not be terminated under the provisions of clause 10 except for cause.

The trial court determined that the provisions of clause 10 were unambiguous and that they gave Union the right to terminate the lease on notice during the first 12 months. ■ In considering the propriety of this determination we observe where the interpretation of an instrument does not turn on the credibility of extrinsic evidence, the interpretation is solely a judicial function and is, therefore, a question of law. Under these circumstances we are not bound by the trial court's interpretation. (See *Parsons* v. *Bristol Dev. Co.,* 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839]; *Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825]; *Estate of Russell,* 69 Cal.2d 200, 213 [70 Cal.Rptr. 561, 444 P.2d 353].) In the present case neither party offered extrinsic evidence as an aid to interpretation; nor did either party seek to invoke the principle declared in *Pacific Gas & Elec. Co.* v. *G. W. Thomas Drayage etc. Co.,* 69 Cal.2d 33, 39-40 [69 Cal.Rptr. 561, 442 P.2d 641], which permits extrinsic evidence where such evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible. (See *Delta Dynamics, Inc.* v. *Arioto,* 69 Cal.2d 525, 528 [72 Cal.Rptr. 785, 446 P.2d 785].)

■ Our independent examination of the lease leads us to the conclusion that the trial court's interpretation was correct. The language of clause 10 clearly states that Union had the right to terminate the lease at any time during the first 12-month period. An identical privilege was given to Chandler who could terminate the lease at any time during the life of the lease upon the giving of a 90-day notice. From a reading of the lease and the related clauses we think it clear that it was the intent of the parties that Union could terminate the lease during the first 12-month period with or without cause and, thereafter, only for cause as specified in clause 9. The meaning of clause 10 is not altered by the prefatory phrase "PROBATIONARY PERIOD." As in the case of the other clauses this phrase was in the nature of an "informatory caption" which pointed to the language which followed it. When read with the operative language which follows it, the meaning of clause 10 is that Union reserved the unlimited and unrestricted right during the first 12-month period to determine whether Chandler was a satisfactory lessee to whom it was willing to be bound for the prescribed term beyond the first 12 months of the lease.

## Bad Faith

Chandler asserts that the trial court erred in not allowing the jury to determine whether or not Union was in bad faith in using the termination clause. The offer of proof was that Union was exercising the cancellation provision to control Union's retail prices as part of an unlawful price-fixing scheme. We observe, therefore, that this claim of error is interrelated with Chandler's contention that the termination of the lease was in further-ance of a plan to violate the antitrust laws of the United States and the State of California. We also note here that neither of these defenses was delineated as an issue in the pretrial conference order and we are concerned with them only if they are proper equitable defenses to an unlawful detainer action within the delineated broad issue "Whether or not the plaintiff had the right to terminate the lease as of October 17, 1967." Accordingly, we now proceed to consider the "antitrust defenses."

## The Antitrust Laws

The trial court rejected the "antitrust defenses" on the basis that they were beyond the scope of an unlawful detainer action. The offer of proof was that Union was exercising clause 10 of the lease to enforce a resale gasoline price-fixing scheme in Northern California and that the lease was being terminated because Chandler would not accede to such scheme. In support of his contention that such defenses are proper in an unlawful detainer action, Chandler relies on the principles declared in *Abstract Inv.*, *supra*, 204 Cal.App.2d 242. As indicated above, *Abstract Investment* held that a lessee could assert a defense to an unlawful detainer action that he was being evicted solely because he was a Negro. In the light of this holding Chandler urges that the policy against combinations and contracts in restraint of trade are analogous to the policy against racial discrimination.

Before considering the application of *Abstract Investment* to the instant case we observe that, aside from *Abstract Investment,* the California cases which have permitted the courts to inquire into equitable considerations in unlawful detainer actions have done so on the basis that if the equitable defense is made out the facts or conditions upon which the right to termi-nate depends do not exist. In *Abstract Investment* there was engrafted upon this rationale the analogous principle that an eviction cannot be ordered where it calls into play state action which is violative of the federal or state Constitutions. (204 Cal.App.2d 242, 255.) The rationale of *Abstract Investment* is that a constitutional defense based on a broad equitable prin-ciple which has substantial justice for its objective outweighs the interest in preserving the summary nature of an action. (P. 249.) In *Hill* v. *Miller*, 64 Cal.2d 757, 759-760 [51 Cal.Rptr. 689, 415 P.2d 33], the Supreme Court, commenting on the holding in *Abstract Investment,* observed that

"In that case it was held that to make available to a discriminating landlord the aid and processes of a court in effecting a discrimination would involve the state in action prohibited by the Fourteenth Amendment." (P. 760.)

Adverting to the instant case, we apprehend that the type of private discrimination alleged here does not offend the federal and state Constitutions. Accordingly, the court's action in ordering Chandler's eviction would not be violative of the federal and state Constitutions even if it could be shown that the motivation for Chandler's eviction was his refusal to engage in an unlawful price-fixing scheme in violation of the federal antitrust laws and the Cartwright Act. Therefore, absent any constitutional proscriptions, we see no basis for extending the exception to the general rule prohibiting affirmative defenses in an unlawful detainer action to include defenses such as those alleged here which are extrinsic to the facts upon which the right to terminate rests. If Union has in fact violated the federal antitrust laws or the Cartwright Act, Chandler has an adequate remedy at law which he may enforce in the proper forum. (See § 4, Clayton Act, 38 Stat. 731, 15 U.S.C.A. § 15; §§ 1 and 2 of the Sherman Act, 26 Stat. 209, as amended, 50 Stat. 693, 15 U.S.C.A. §§ 1 and 2; *Simpson* v. *Union Oil Co.*, 377 U.S. 13 [12 L.Ed.2d 98, 84 S.Ct. 1051]; Bus. & Prof. Code, §§ 16700 to 16758.) When we weigh the complex and protracted nature of antitrust cases in the light of the adequate remedies and damages afforded an aggrieved party in such cases against the interest in preserving the summary nature of an unlawful detainer action, we believe the latter to be of paramount importance. The interest of doing substantial justice in the unlawful detainer action which exists where the basis of the eviction is racial discrimination is not present where the motivation for the eviction finds its roots in an antitrust violation. In the latter case substantial justice is more efficaciously achieved in the separate actions which are readily available to the aggrieved party. In this regard we note that Chandler has on file in the same court as the present case an action against Union alleging violation of the Cartwright Act.[1]

With respect to the federal antitrust laws, we observe that, in any event, the state courts have no jurisdiction to construe or enforce the federal antitrust laws. This jurisdiction is vested in the federal courts. (*Freeman* v. *Bee Machine Co., Inc.*, 319 U.S. 448, 451, fn. 6 [87 L.Ed. 1509, 1512, 63 S.Ct. 1146]; *Blumenstock Bros. Advertising Agency* v. *Curtis Publishing Co.*, 252 U.S. 436, 440 [64 L.Ed. 649, 652, 40 S.Ct. 385]; *General Talking Pictures Corp.* v. *De Marce*, 203 Minn. 28 [279 N.W. 750, 753]; *Burgess* v. *Hogan* (La.App.) 175 So.2d 924, 925.) In *Burgess* it was held

---

[1]Chandler also filed an injunction proceeding in Alameda County to compel Union to resume gasoline deliveries to the station which were apparently suspended concurrent with the notice to quit the premises. The petition was denied.

that the alleged violation of the Clayton Act prohibiting agreements creating a monopoly or designed to lessen competition in interstate commerce by a lessee did not affect his right to terminate a lease with sublessees in an action of eviction by summary proceeding. (Pp. 925-926.) We also note that acts violative of federal antitrust laws may be enjoined by an action brought in the federal courts. (15 U.S.C.A. § 26.) In the instant case Chandler did avail himself of this remedy by filing an action in the federal court seeking an injunction to prevent Union from taking any action to remove him from the station, basing his petition on the federal antitrust laws and alleging, essentially, that Chandler's pricing policies were the basis of Union's termination of the lease under clause 10.[2]

### Promissory Fraud

Chandler asserts that the trial court erred in not allowing the issue of promissory fraud to be decided by the jury. This claim is predicated upon an offer of proof made by him that Union should be estopped from exercising a right to terminate the lease based upon promises by Union's representative, Mr. Roland Simonson, that clause 10 only applied to dealers who turned the station into a garage and did heavy mechanical work. Chandler is apparently complaining that this offer of proof was improperly rejected because the trial court restricted the issue to whether there was any undue pressure or coercion on Chandler showing that his signing of the lease was not a free and voluntary act.

The record reflects that the following extrinsic evidence was admitted by the trial court on this issue: Chandler testified that he had been a service station operator in the Fremont area for about eight years; that Union sought him out to operate the subject service station; that in the course of his first meeting with Simonson concerning taking over the station Chandler was told that the station lease was "just [a] standard three-year oil company lease"; that Chandler expressed interest in taking over the station but asked Simonson for a copy of the lease; that Chandler was told that Simonson would bring it to their next meeting; that at the next meeting Simonson neglected to bring a copy of the lease, but did deliver the keys to the station to Chandler; that this occurred approximately a week before the operative date of the lease; that approximately two days before the station opened

---

[2]The federal court made findings of fact and conclusions of law which, in pertinent part, stated: "9. There is adequate reason to believe that the decision of defendant UNION OIL COMPANY to terminate the lease during the probationary period could well have been predicated upon factors in no way related to the price of gasoline charged by the plaintiff at his service station. 10. The evidence . . . fails to establish that plaintiff's pricing policies were the cause for UNION OIL COMPANY's determination to terminate the lease in accordance with Clause 10. 11. Upon . . . the evidence adduced before this Court, it cannot be found that the plaintiff is likely to prevail in the ultimate trial of this cause, and the Court so finds."

Chandler again requested a copy of the lease from Simonson, who assured Chandler he would get the lease to him; that on the day the station opened Chandler was finally tendered a copy of the lease, and was told by Simonson that he had to sign it that day; that when he read clause 10 he observed to Simonson that he would be a fool to sign the lease because he didn't have a three-year lease but only a thirty-day lease; that Simonson told him the clause didn't apply to him and that, with his background, he didn't have to worry about the clause; that the clause was put in by Union to protect it against a dealer who would only want a garage for heavy repair work and who would not be interested in pumping a volume of gasoline; that then he signed the lease; and that since he had given up his other business he had the choice of either signing the lease or getting out.

Simonson testified that he did not show Chandler a copy of the lease prior to the day it was signed, although Chandler had requested it, because of the time required to obtain credit information; that Chandler did tell him he wanted to take it home to study it; that he told Chandler he could take it home but that he could not dispense any products until the lease was signed; that on the day he presented the lease to Chandler he began to read it aloud to Chandler who, after a portion was read, stopped him with the observation that since it was a standard form lease it was unnecessary to read everything that was in the lease; that they went over clause 10; that Chandler did state that he had only a 30-day lease and that Simonson agreed with him; that he didn't tell Chandler to ignore or forget about clause 10; and that he attempted to explain its meaning by citing an example of what it meant; and that he cited as an example that Union did not want the station to be run as a garage with major overhaul work.

The record also discloses that court and counsel treated the issue tendered by the foregoing evidence as "equitable estoppel" and that, since it was an equity question, Chandler's counsel stipulated that the issue was to be determined by the court and not by the jury. Accordingly, upon the basis of this evidence, the trial court made findings that Simonson at no time made any statements or promises to Chandler which were false or intended to deceive or mislead Chandler; that Chandler did not rely on any statement or promise made by Simonson purporting to interpret, limit, modify or change the terms of the proffered lease; that Chandler read clause 10 before signing the lease; that he knew and understood the terms of the clause; that he was free to sign or not to sign the proffered lease; and that he signed with full knowledge that during the first year the lease was terminable by Union at any time on 30 days' notice.

It is apparent from the foregoing that the trial court permitted Chandler to present a proper equitable defense to the instant unlawful detainer action and that, whether it be deemed couched in terms of promissory fraud or

equitable estoppel, the evidence encompassed by Chandler's offer of proof was received and considered by the trier of fact. Upon receiving such evidence the court found the facts contrary to Chandler's contention. These findings negative the existence of the elements required to establish the equitable defense asserted by Chandler predicated upon the evidence proffered by him. Since the court found against the defense of equitable estoppel, there were no factual issues for the jury to decide. (See *Richard* v. *Degen & Brody, Inc.*, 181 Cal.App.2d 289, 295 [5 Cal.Rptr. 263].)

Chandler's assertion that the extrinsic evidence permitted by the court only went to the defense of coercion, oppression and undue influence, and not to the issue of fraud is without merit. As indicated above, Chandler *was* permitted to prove the elements of fraud upon which he was predicating promissory fraud as an equitable defense to an unlawful detainer action within the permissible limits. We here observe, moreover, that no issue of fraud was tendered by the pleadings nor was any delineated in the pretrial conference order. ▪ Furthermore, as already pointed out, the affirmative defense of fraud could not be urged in an unlawful detainer action unless it presented the type of equitable defense recognized as an exception to the general rule which proscribes counterclaims, cross-complaints or affirmative defenses in such actions.

### The Findings

The final contention made by Chandler is that the court made findings of fact beyond the scope of issues litigated and that certain findings of fact are erroneous.

In urging that findings were made outside the scope of the issues litigated, Chandler reiterates the contention that the court limited his equitable defense to the issue of coercion and that, therefore, any finding beyond that which found that Chandler was free to sign or not sign the lease as he saw fit is immaterial and should be disregarded. As already discussed, the court admitted evidence of the circumstances surrounding the execution of the lease in order to determine whether Union, by its conduct, would become estopped from asserting the provisions of clause 10. The evidence adduced was not limited to coercion but to all of Simonson's conduct with respect to the circumstances surrounding the execution of the lease in order to determine whether clause 10 was rendered inoperative as a result of such conduct.

Chandler states that finding No. 2 is erroneous but he does not point out the deficiency except to state that Union is liable for Simonson's misrepresentations under established principles of agency. Finding No. 4 is attacked on the basis that there is no support in the evidence that Chandler knew

that clause 10 gave him a lease terminable upon 30 days' notice during the first year. In considering these objections we note that Chandler does not challenge the correctness of finding No. 3 by which the court found that no false statements or promises were made to Chandler by Simonson and that there was no attempt by Simonson to mislead or deceive Chandler. This finding, therefore, negates Chandler's criticism of findings 2 and 4 since each is based on the determination, upon conflicting evidence, that Simonson made no misrepresentations and that Chandler under the circumstances and in the light of the evidence was fully aware of the meaning of clause 10 and still freely chose to execute the lease. In sum, the question really presented by the challenge to the findings is whether there was any substantial evidence in the record to support the findings of the trial court. Upon the basis of the evidentiary record and the resolution by the trial court of the conflicting evidence, we find that the findings are supported by substantial evidence.

## Attorneys' Fees on Appeal

Clause 13 of the lease provides that "Lessee agrees to reimburse Union for any costs and expenses (including attorney's fees) incurred by tenant under this or any other provision of this Lease." Union contends that this provision includes services on appeal and has requested that we permit the trial court to make this determination upon the filing of the remittitur.

The judgment is affirmed. Plaintiff may file in the superior court a motion for attorneys' fees within 30 days from the date of the filing of the remittitur.

Sims, J., and Elkington, J., concurred.

A petition for a rehearing was denied March 17, 1970, and appellant's petition for a hearing by the Supreme Court was denied April 22, 1970. Tobriner, J., did not participate therein.